OPINION OF THE COURT
Edward M. O’Gorman, J.
This is an action on a performance bond. The plaintiff village contends that the defendant is surety on a subdivider’s obligation to install certain streets, water lines, storm drainage, and sanitary sewer installations in the streets, as shown on an approved plat of a subdivision in the Village of Warwick. The subdivider, having failed to complete the installation and having abandoned the subdivision project prior to the completion of any homes under construction therein, the *515 present action was instituted to recover on the performance bond.
The defendant has denied that the bond relied upon by the plaintiff was ever signed by the defendant or ever posted with the village. It contends that if such bond should be held to have been lawfully posted, it was never declared in default and that the procedure adopted by the village in this case, by undertaking to issue building permits to the American Savings and Loan Association based upon that bank’s secured agreement to complete the installation of the improvements prior to this trial at its own expense, while the village continued to maintain this action, was an illegal procedure relieving the defendant of liability on its bond.
The court, without a jury, has taken testimony concerning the posting of the bond, the declaration of the default, and the procedure adopted to complete the subdivision improvements prior to the receipt of any proceeds from the defendant. Decision on these issues was reserved.
The plaintiff has now completed its proof in the case and the defendant has moved to dismiss the complaint.
The evidence has established that the original subdivider, Hawthorne Heights Ltd., was required to complete certain street and utility improvements. To secure the performance of the necessary work by the subdivider, it was required to post a surety bond. Annexed to the complaint is a copy of the document.
The proof showed that the village attorney approved the document as to its form, sufficiency, and manner of execution, and forwarded it to the Mayor; that upon filing this document, certain building permits were issued to the subdivider and construction work was commenced on certain of the proposed homes in the subdivision; that there came a time prior to the one-year period referred to in the said bond when the subdivider abandoned the project; that at this time none of the residential construction had been completed; there were no occupants in any of the residences and a substantial amount of the utility and roadwork was left uncompleted; that efforts were made on behalf of the village to stir up the completion of the project, and on or about September 17, 1973, the village attorney advised the defendant that the village trustees desired to institute an action on the bond. In December, 1973 the action was actually commenced.
While the action was pending, the mortgage covering the *516 property being subdivided also fell into default and was in due course foreclsoed by the intervenor, American Savings and Loan Association.
The proof further establishes that subsequent to the commencement of this action, certain village officials made what the court must characterize as an informal arrangement with representatives of the intervenor bank. This arrangement, while not to be found in any minutes of the village board, is not denied, but the details ofj the agreement must be spelled out from the minimal correspondence in connection therewith which has been offered in evidence.
By the terms of this understanding, it was agreed, between some of the officials of the Village of Warwick and representatives of the American Savingsj and Loan Association, that that bank, now the owner of the plremsies being subdivided, would undertake on its own account to complete and sell the residences to be constructed thereon. In order to obtain the necessary permits, the bank further agreed to complete the improvements which had been left unfinished at its own expense and to post cash security for the performance of this obligation. Those purporting to represent the village undertook to agree to issue the permits and at the same time to pursue the action pending against the defendant bonding company and to turn over to the intervenor bank any recovery they might make in such! action. The American Savings and Loan Association has intervened in this action for the purpose of enforcing its claim over against the Village of Warwick.
Sometime after this arrangement had been agreed upon, the bank hired other contractors who in 1976 completed the residential construction, the streets, and the remainder of the improvements, for which the bank made payment in full.
The court is satisfied from the evidence that while all of the formalities may not have been observed, there has been substantial compliance with the statute governing the posting of a performance bond in tikis case. The court is further satisfied that there has been a ¡sufficient execution of this bond which, when taken together with the conduct of the parties, would render it enforceable against the defendant if other conditions of liability are present. The original bond which was submitted was addressed to the Town of Warwick instead of the Village of Warwick. U]ion the subsequent discovery of this error, the bonding company was requested to amend its *517 bond to recite the word "Village” where formerly the word "Town” appeared. This change was made and a revised form was forwarded to the village. The absence of any signature on this amended document does not vitiate the original obligation which, in the court’s view, was adequate, without amendment, to establish the intention of both parties, at the time the bond was originally posted, to refer to this subdivision and this municipality.
The court is also of the opinion that while not precisely following the provisions of section 179-1 of the Village Law, the direction to the village attorney and his letter to the bonding company constitute substantial compliance with that statute for the declaration of a default under such bond.
We come now to consider the effect of the arrangement with the intervenor bank. It is contended on behalf of the village that it is not restricted in the manner in which it completes the required improvements and that it is not restricted to a specific procedure by which to enforce the performance bond.
The court must disagree. Both the clear mandate of the statute and compelling reasons of public policy require a contrary conclusion. The relevant events in this action originated at a time when the procedure in connection with performance bonds was governed by section 179-1 of the Village Law, and continued after that law was revised and its sections renumbered in September, 1973. Reference will be made herein to both the former and the latter sections which are, as far as concerns this case, drafted in identical language.
Section 179-1 of the Village law makes provision for a performance bond as a substitute for completion of improvements required as a precondition for the issuance of building permits.
Section 179-1, which establishes the procedure for enforcing such a bond in the event of a default by the subdivider, provides as follows: "In the event that any required improvements have not been installed as provided in this section within the term of such performance bond, the village board may thereupon declare the said performance bond to be in default and collect the sum remaining payable thereunder, and upon the receipt of the proceeds thereof the village shall install such improvements as are covered by such performance bond and are commensurate with the extent of building development that has taken place in the subdivision but *518 not exceeding in cost the amount of such proceeds.” (See, also, Village Law, § 7-730, subd 1.)
Section 179-0 makes the procedure to enforce said performance bond in the event of default mandatory in the following terms: "The term, manner of modification and method of enforcement of such bond shall be determined by the appropriate board in substantial conformity with section one hundred seventy-nine-i of this article.” (See, also, Village Law, § 7-736, subd 2.) !
In order to protect the residents of the village from the possibly heavy economic burden of completing improvements in private subdivisions, the profit from which does not inure to the public at large, the Legislature by the terms of section 179-1 restricts the cost of the installation by the village of improvements to the amount of the proceeds of the performance bond. As a further safeguard in this connection, the statute requires that the village shall install such improvements "upon the receipt of the proceeds” of the said bond. The scheme contemplated by the statute is that the village make the expenditures from the proceeds of the bond and then, if there is any excess remaining ¡from said proceeds, they are to be refunded to the surety.
The procedure contemplated by the arrangement in this case departs substantially from this statutory requirement.
There is a further safeguard built into the statute for the benefit of the bonding company and this is contained in the language that, once having received the proceeds of the performance bond, the village may only expend so much thereof as is "commensurate with the extent of building development that has taken place in the subdivision”. Further, the defendant, by the procedure adopted pursuant to the arrangement of the other parties hereto, has been deprived of the opportunity to demonstrate on mitigation of damage the small number of buildings commenced $nd under construction at the time of the default, none of which had yet been occupied (Town of Shawangunk v Goldwil Props. Corp., 61 AD2d 693). It is instead confronted with the cost of the improvements to service the completed subdivision.
It must be further noted that the intervenor bank has heretofore completed all of the required improvements and paid for the same. There are at present no improvements remaining to be completed in the said subdivision. The only improvements for which the village may use the proceeds of *519 the bond in accordance with the statute are "any required improvements [which] have not been installed” as provided in section 179 -1.
The court finds no authority permitting such a radical departure from the requirements of the Village Law as is presented in this case. I find no statutory authorization which would empower the Village of Warwick to prosecute this action for the benefit of the intervenor bank. I find no assignment of the cause of action of any kind to exist between the parties, and there may be serious questions as to the validity of such an assignment.
Brushing aside the trappings in which this case comes before the court, there is no way to distinguish the activities of the intervenor bank from those of any other subdivider in the Village of Warwick. Having become the owners of a parcel of real property, the bank found it to be in its interest to subdivide the property and construct thereon houses on individual building lots.
In order to obtain the requisite building permits to complete construction which had already been commenced and to undertake new construction, the bank, like any other developer, either had to install the improvements required by the planning board or post security for an agreement to do so within a specified period of time. This the bank in fact did, posting cash security with the village.
Although many formalities in connection with the application were not observed, including participation by the board of trustees on behalf of the village, having posted its security and having completed the improvements and having completed the subdivision, the bank now is entitled to a return of its cash deposit, which presumably it has already received, and stands no better and no worse than any other successful subdivider.
The security posted by the bank secured the bank’s agreement to perform and no other. The security posted by the defendant ran solely to the Village of Warwick, which has sustained no damages, and did not in any way include as a secured party the intervenor bank.
In any event, at this time that this court is called upon to render its judgment, there are no improvements remaining to be completed by the Village of Warwick. Therefore, it would be a nugatory exercise for the court to direct that payment be made by the defendant bonding company of the proceeds of its *520 bond and thereafter direct that the proceeds be repaid as not being required. The village has discharged such responsibility as it may have had to the intervenor by prosecuting this action. The intervenor entered into its arrangement to have the village reimburse it for itsi expenditures in aid of the sale of its properties at its peril.
In view of the foregoing, it will be unnecessary for the court to deal with the defendant’s j claim that the improvements installed were substantially in excess of what was required by the state of the subdivision at the time of the default; that a portion of these utilities had already been installed by the original contractor; that there was a lack of notice to the bonding company of the contelmplated construction; and that there was a substantial escalation in the cost of the work from the date of the default to the date of performance, some three years later.
The motion to dismiss the complaint will be granted.