**CITY OF PEEKSKILL, Plaintiff,**

v.

**The CONTINENTAL INSURANCE COMPANY, Defendant.**

**No. 97 Civ. 4116(BDP).**

United States District Court, S.D. New York.

April 9, 1998.

Russell Smith, William J. Florence, Florence & Smith, Peekskill, NY, for Plaintiff.

Kenneth Gould, Marcus Rippa & Gould, White Plains, NY, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PARKER, District Judge.

Plaintiff City of Peekskill ("the City") filed this action against defendant Continental Insurance Company ("Continental") to collect the proceeds of a public improvement bond ("the Bond") issued by Continental in the

amount of $1,121,000 in May 1989. The Bond was issued to secure the obligation of the Mount Florence Group ("Mount Florence"), as developer, to construct public improvements in connection with a residential development known as Townhouse II, which was part of the Chapel Hill Estates project in Peekskill, New York. In February 1996, the City declared Mount Florence in default and filed its claim for the proceeds of the Bond. In April 1997, the City filed this action. On March 5, 1998 this matter was tried to the Court. The Court's findings of fact and conclusions of law follow.

## FINDINGS OF FACT

1. In 1986, Mount Florence, a New York joint venture, purchased 115.34 acres of land in Peekskill, New York to construct a residential development project called Chapel Hill Estates ("Chapel Hill"). In August 1986, the City Common Council ("Common Council") granted to Mount Florence a Special Use Permit for a Planned Residential Development.

2. On August 11, 1987, the City Planning Commission ("Planning Commission") conditionally granted Mount Florence Final Site Plan Approval for the phase known as Townhouse II, consisting of the development rights to 215 residential townhouse units, as evidenced by a letter from the Planning Commission dated August 31, 1987.

3. One of the conditions of the Site Plan Approval was that Mount Florence obtain a subdivision performance bond, naming the City as obligee, in order to guarantee its obligations to construct public improvements, including recreational facilities. The minimum amount of the bond was set at $1,121,-000. On May 16, 1989, Continental issued the required subdivision bond in the amount of $1,121,000, securing the construction of public improvements at Townhouse II.

4. On June 29, 1989, the City issued a Building Permit to Mount Florence with respect to Townhouse II. The Building Permit expired on June 29, 1990, Mount Florence having failed to construct any improvements at Townhouse II.

5. On February 21, 1990, the Planning Commission granted to Homestead Enterprises, Inc. ("Homestead"), the successor to Mount Florence, an Amended Final Site Plan Approval for Townhouse II, subject to the conditions set forth in letters from the Planning Commission dated February 22, 1990.

6. On May 7, 1990, Mount Florence sold the first section of Townhouse II (II–1), and the related development rights to M.M.E. Power Enterprises, Inc. ("MME"), a subsidiary of Homestead. Both MME and Homestead were controlled by Max Pesach.

7. MME began development of Townhouse II–1 and sold approximately 25 of the 40 units it constructed. MME stopped all activities in March 1993, and in December 1993 filed a petition for protection under Chapter 11 of the Bankruptcy Code.

8. In July 1992, Mount Florence transferred title to the portion of Townhouse II that it still owned to R.I. Waterman Properties, Inc. ("R.I.Waterman"). The deed was recorded on March 4, 1993. R.I. Waterman subsequently transferred the property on April 22, 1994 to Chapel Hill Development Corp. ("Chapel Hill Development"), an entity controlled by Max Pesach.

9. On January 23, 1995, the Common Council adopted a resolution granting Chapel Hill Development an Amended Special Use Permit for a Planned Residential Development of Chapel Hill, which superseded the previous Special Use Permit granted to Mount Florence in August 1986. The Special Use Permit granted to Chapel Hill Development required the developer to construct public improvements for the project, including recreational facilities, and to post Letters of Credit in the amount of $320,000 to secure the performance of such obligations.

10. The Letters of Credit posted by Chapel Hill Development were required by the City to remain in full force and effect until the Townhouse II public improvements, as required by the City, were completed.

11. On February 28, 1996, the City notified Continental in writing that the Bond issued on behalf of Mount Florence was in default, and requested that Continental immediately complete the public improvements

secured by the Bond or pay the proceeds of the Bond to the City. Continental has made no payments under the Bond and has not completed the Townhouse II public improvements.

12. Chapel Hill Development has agreed to guarantee the construction of the public improvements and recreational facilities by a bond that would be in place before construction of a phase begins. Alternatively, public improvements must be completed before a certificate of occupancy is issued, as a condition of final subdivision approval.

13. The cost to construct the Townhouse II public improvements secured by the Bond is $1,221,300. To date, the City has not expended any funds to construct the Townhouse II public improvements and has incurred no expenses related to the construction of such improvements. The current developers have agreed to complete the public improvements. This action was commenced on April 30, 1997.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this matter under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

2. The City is not barred by any statute of limitations from instituting this action for recovery under the Bond. *See Mount Florence Group v. City of Peekskill,* 652 N.Y.S.2d 814, 235 A.D.2d 787 (1997).

3. Continental's liability to the City for the Townhouse II public improvements could not exceed an amount commensurate with the extent of building development completed by Mount Florence. *See* New York General City Law, § 33; *Town of Shawangunk v. Goldwil Properties Corp.,* 403 N.Y.S.2d 784, 61 A.D.2d 693 (1978); *Town of New Windsor v. Inbro Development Corp.,* 448 N.Y.S.2d 99, 112 Misc.2d 983 (Sup.Ct. 1982). Because Mount Florence completed no aspect of the development of Townhouse II that would require the completion of the public improvements covered by the Bond, Continental has incurred no liability to the City.

4. The expiration of the site plan approval upon which the Bond was based and the issuance of a superseding and materially different site plan approval to a new developer, all without Continental's knowledge or consent, extinguished the obligations of Continental as guarantor. *See Varlotta Construction Corp. v. Sette–Juliano Construction Corp.,* 651 N.Y.S.2d 484, 234 A.D.2d 183 (1996); *cf. Town of Poughkeepsie v. Holden Construction Co., Inc.,* 480 N.Y.S.2d 384, 104 A.D.2d 873 (1984).

5. Because the City has expended no funds to complete the Townhouse II public improvements and because the current developers have agreed to complete such improvements, Mount Florence's failure to construct the Townhouse II public improvements has caused the City no damages that would entitle it to call upon the proceeds of the Bond. *See Kenford Co., Inc. v. County of Erie,* 67 N.Y.2d 257, 260, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234 (Ct.App.1986); *Village of Warwick v. Republic Ins. Co.,* 428 N.Y.S.2d 589, 104 Misc.2d 514 (Sup.Ct.1980); cf. *Town of Poughkeepsie v. Holden Construction Co.,* 480 N.Y.S.2d 384, 104 A.D.2d 873 (1984).

## CONCLUSION

For the reasons stated, plaintiff's claim is denied. The Clerk of the Court is directed to enter judgment for the defendant.

**SO ORDERED:**