OPINION OF THE COURT
Per Curiam.
The issue in this appeal is whether a plaintiff, in an action *260 for breach of contract, may recover loss of prospective profits for its contemplated 20-year operation of a domed stadium which was to be constructed by defendant County of Erie (County).
On August 8, 1969, pursuant to a duly adopted resolution of its legislature, the County of Erie entered into a contract with Kenford Company, Inc. (Kenford) and Dome Stadium, Inc. (DSI) for the construction and operation of a domed stadium facility near the City of Buffalo. The contract provided that construction of the facility by the County would commence within 12 months of the contract date and that a mutually acceptable 40-year lease between the County and DSI for the operation of said facility would be negotiated by the parties and agreed upon within three months of the receipt by the County of preliminary plans, drawings and cost estimates. It was further provided that in the event a mutually acceptable lease could not be agreed upon within the three-month period, a separate management contract between the County and DSI, as appended to the basic agreement, would be executed by the parties, providing for the operation of the stadium facility by DSI for a period of 20 years from the completion of the stadium and its availability for use.
Although strenuous and extensive negotiations followed, the parties never agreed upon the terms of a lease, nor did construction of a domed facility begin within the one-year period or at any time thereafter. A breach of the contract thus occurred and this action was commenced in June 1971 by Kenford and DSI.
Prolonged and extensive pretrial and preliminary proceedings transpired throughout the next 10 years, culminating with the entry of an order which affirmed the grant of summary judgment against the County on the issue of liability and directed a trial limited to the issue of damages (Kenford Co. v County of Erie, 88 AD2d 758, lv dismissed 58 NY2d 689). The ensuing trial ended some nine months later with a multimillion dollar jury verdict in plaintiffs’ favor. An appeal to the Appellate Division resulted in a modification of the judgment. That court reversed portions of the judgment awarding damages for loss of profits and for certain out-of-pocket expenses incurred, and directed a new trial upon other issues (Kenford Co. v County of Erie, 108 AD2d 132). On appeal to this court, we are concerned only with that portion *261 of the verdict which awarded DSI money damages for loss of prospective profits during the 20-year period of the proposed management contract, as appended to the basic contract. That portion of the verdict was set aside by the Appellate Division and the cause of action dismissed. The court concluded that the use of expert opinion to present statistical projections of future business operations involved the use of too many variables to provide a rational basis upon which lost profits could be calculated and, therefore, such projections were insufficient as a matter of law to support an award of lost profits. We agree with this ultimate conclusion, but upon different grounds.
Loss of future profits as damages for breach of contract have been permitted in New York under long-established and precise rules of law. First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes (Wakeman v Wheeler & Wilson Mfg. Co., 101 NY 205). In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made (Witherbee v Meyer, 155 NY 446). If it is a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty (Cramer v Grand Rapids Show Case Co., 223 NY 63; 25 CJS, Damages, § 42 [b]).
These rules must be applied to the proof presented by DSI in this case. We note the procedure for computing damages selected by DSI was in accord with contemporary economic theory and was presented through the testimony of recognized experts. Such a procedure has been accepted in this State and many other jurisdictions (see, De Long v County of Erie, 60 NY2d 296). DSI’s economic analysis employed historical data, obtained from the operation of other domed stadiums and related facilities throughout the country, which was then applied to the results of a comprehensive study of the marketing prospects for the proposed facility in the Buffalo area. The quantity of proof is massive and, unquestionably, represents business and industry’s most advanced and sophisticated *262 method for predicting the probable results of contemplated projects. Indeed, it is difficult to conclude what additional relevant proof could have been submitted by DSI in support of its attempt to establish, with reasonable certainty, loss of prospective profits. Nevertheless, DSI’s proof is insufficient to meet the required standard.
The reason for this conclusion is twofold. Initially, the proof does not satisfy the requirement that liability for loss of profits over a 20-year period was in the contemplation of the parties at the time of the execution of the basic contract or at the time of its breach (see, Chapman v Fargo, 223 NY 32; 36 NY Jur 2d, Damages, §§39, 40, at 66-70). Indeed, the provisions in the contract providing remedy for a default do not suggest or provide for such a heavy responsibility on the part of the County. In the absence of any provision for such an eventuality, the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject. The evidence here fails to demonstrate that liability for loss of profits over the length of the contract would have been in the contemplation of the parties at the relevant times.
Next, we note that despite the massive quantity of expert proof submitted by DSI, the ultimate conclusions are still projections, and as employed in the present day commercial world, subject to adjustment and modification. We of course recognize that any projection cannot be absolute, nor is there any such requirement, but it is axiomatic that the degree of certainty is dependent upon known or unknown factors which form the basis of the ultimate conclusion. Here, the foundations upon which the economic model was created undermine the certainty of the projections. DSI assumed that the facility was completed, available for use and successfully operated by it for 20 years, providing professional sporting events and other forms of entertainment, as well as hosting meetings, conventions and related commercial gatherings. At the time of the breach, there was only one other facility in this country to use as a basis of comparison, the Astrodome in Houston. Quite simply, the multitude of assumptions required to establish projections of profitability over the life of this contract require speculation and conjecture, making it beyond the capability of even the most sophisticated procedures to satisfy the legal requirements of proof with reasonable certainty.
The economic facts of life, the whim of the general public *263 and the fickle nature of popular support for professional athletic endeavors must be given great weight in attempting to ascertain damages 20 years in the future. New York has long recognized the inherent uncertainties of predicting profits in the entertainment field in general (see, Broadway Photoplay Co. v World Film Corp., 225 NY 104) and, in this case, we are dealing, in large part, with a new facility furnishing entertainment for the public. It is our view that the record in this case demonstrates the efficacy of the principles set forth by this court in Cramer v Grand Rapids Show Case Co. (223 NY 63, supra), principles to which we continue to adhere. In so doing, we specifically reject the "rational basis” test enunciated in Perma Research & Dev. Co. v Singer Co. (542 F2d 111, cert denied 429 US 987) and adopted by the Appellate Division.
Accordingly, that portion of the order of the Appellate Division being appealed from should be affirmed.
Chief Judge Wachtler and Judges Meyer, Alexander, Titone and Kane* concur in Per Curiam opinion; Judges Simons, Kaye and Hancock, Jr., taking no part.
Order insofar as appealed from affirmed, with costs.

 Designated pursuant to NY Constitution, article VI, § 2.