■ KENFORD COMPANY, INC., Respondent-Appellant, v COUNTY OF ERIE et al., Appellants-Respondents.—Judgment affirmed with costs to plaintiff. Memorandum: The County of Erie, Legislature of the County of Erie and B. John Tutuska, as County Executive of Erie County (hereinafter defendant) appeal from a judgment, after a jury trial, which awarded plaintiff, Kenford Company, Inc., damages in the sum of $6.5 million for the loss of expected peripheral land appreciation resulting from the county's breach of its contract to construct a domed stadium facility in Lancaster, New York.

The instant trial resulted from a reversal in part by this court of an earlier judgment rendered in favor of plaintiff against the county. We ordered a retrial on the sole issue of the lost appreciation of peripheral land values of property purchased by Kenford in anticipation of the construction of a domed stadium *(Kenford Co. v County of Erie,* 108 AD2d 132, *affd* 67 NY2d 257). This case has had a lengthy legal history, the facts of which are set forth fully in *Kenford Co. v County of Erie (supra,* at 133-135).

On the earlier appeal, we held that Kenford was entitled to recover the lost appreciation of its land surrounding the proposed stadium site, but determined that the court erred by permitting plaintiff's expert to estimate the appreciation of the land with all the projected improvements (theme park, hotels, etc.). We remitted the issue for a retrial to permit plaintiff to offer proof of the value of the land as "raw acreage" following the construction of the domed stadium (*Kenford Co. v County of Erie, supra,* at 137-139).

On the retrial, the court received testimony concerning the contemplation of the parties at the time of the contract regarding the appreciation of peripheral land values. This should not have been an issue on retrial. We earlier wrote: "There is no dispute that Kenford suffered a monetary loss in land appreciation as a result of defendant's breach of contract. Defendant's own expert admitted that construction of the dome would have caused the peripheral land to appreciate in value fourfold. Nor can it be doubted that both parties contemplated this appreciation, since the contract itself states that the county expected to receive increased property taxes from the peripheral lands purchased by Cottrell and/or Kenford. Unlike Kenford's specific development plans, which were remote and uncertain at the time of contracting, the purchase of the land was a completed fact of which the county had full notice. Also, while it was uncertain whether any particular development scheme would prove profitable, there was no possibility of the land depreciating in value. Thus, damage was certain" (*Kenford Co. v County of Erie, supra,* at 137).

Therefore, it has been decided by this court that the fact that Kenford's land peripheral to the domed stadium would increase in value was within the contemplation of the parties, and it should not have been an issue at retrial. On appeal, defendant claims that testimony at the retrial concerning this "non-issue" prejudiced it, but a review of the record reveals that defendant also argued that contemplation of the parties remained an issue. Under these circumstances, defendant should not now be heard to complain that it was prejudiced by the admission of testimony concerning the contemplation of the parties. Moreover, the testimony was admitted with extensive limiting instructions to the jury, preventing undue prejudice to defendant.

We reject defendant's urging that we now reexamine our holding on this issue which was thoroughly reviewed, analyzed and discussed on the earlier appeal. We further reject defen-

dant's position that the Court of Appeals affirmance of our earlier order (67 NY2d 257, *supra)* compels a contrary result.

Defendant further contends that plaintiff failed to offer sufficient proof of the preconstruction and postconstruction value of the peripheral land. We reversed the earlier award of damages for lost appreciation because it was based on plaintiff's appraiser's valuation of the land, assuming the land had been developed according to plan (with a theme park, golf course, etc.). We instructed: "Upon retrial, the proper measure of damages will be the value of the land as raw acreage following construction of the dome less the value of the land when purchased. The parties' experts may develop a preconstruction estimate of value using familiar principles of valuation, notably the market data approach. The sales price of the subject property may be the best evidence of value * * * A postconstruction estimate of value may similarly be derived by using the market data approach. The experts may rely on the appreciation experienced by lands surrounding other major developments in western New York as well as in other similar metropolitan areas. We stress, however, that as nearly as possible, the comparables to be relied upon should be large parcels of raw acreage" *(Kenford Co. v County of Erie, supra,* at 139).

In making such a suggestion, it was this court's goal to adhere to the canon of New York appraisal law that "[t]he 'market value of real property is the amount which one desiring but not compelled to purchase will pay under ordinary conditions to a seller who desires but is not compelled to sell' " *(Grant Co. v Srogi,* 52 NY2d 496, 510).

In our view of the record, we find that plaintiff's appraiser used a method which fully comported with the suggestions contained in our opinion on the earlier appeal and which also complied with accepted legal standards.

Defendant argues that plaintiff's appraiser erred in assigning "uses" to land when making a market data analysis. This argument is without merit. Land cannot be valued in a vacuum. The postconstruction value of the land was the amount a "prudent purchaser" would be willing to pay for it, and one major consideration in determining value is the highest and best use to which the property may be put *(Matter of Rochester Urban Renewal Agency [Patchen Post],* 45 NY2d 1, 8). We similarly reject defendant's position that plaintiff's appraiser's postconstruction market comparables were either not truly comparable or tainted by reference to potential uses

and that this testimony should have been stricken. Plaintiff's appraiser adequately explained his use of comparables, and their suitability was explored extensively through the testimony of defendant's experts. The degree of comparability is a question of fact for the jury, and the jury should determine the weight to be given to the expert testimony *(see, Niagara Falls Urban Renewal Agency v 123 Falls Realty,* 66 AD2d 1009, 1010, *appeal dismissed* 46 NY2d 997, *lv denied* 47 NY2d 711).

Defendant assigns error to the court's refusal to allow it to introduce proof of the lack of appreciation of land values surrounding other stadia, particularly the Pontiac Silverdome in the Detroit area, allegedly in contravention of this court's earlier holding. There we held that, when performing a market data appraisal of the Kenford land, the experts could rely upon the appreciation of value of lands surrounding other major developments in other similar metropolitan areas as comparables to determine the postconstruction value of Kenford's land *(Kenford Co. v County of Erie, supra,* at 139). If defendant's experts had performed a market data appraisal on the Kenford land using sales of land surrounding the Silverdome as comparable sales, the trial court, indeed, would have erred in refusing the proof offered by defendant. As plaintiff's appraiser did in his market data analysis, adjustments to the comparables would be made to account for various factors and the degree of comparability would have been a question for the jury to resolve. However, neither of defendant's appraisers performed an appraisal of the Kenford land using the market data approach. Because the issue at retrial was the appreciation of Kenford's land, the court did not abuse its discretion by refusing defendant's request to bring in evidence of the appreciation of land around other domes. It was within the court's discretion to exclude evidence on collateral issues if it would tend to confuse the jury and unduly lengthen the trial.

In our prior decision we noted, in reference to reliance damages, that "a party may not recover both the expense of performing his side of the contract and the profit to be received under it" *(Kenford Co. v County of Erie, supra,* at 145). Defendant argues that Kenford should not have been entitled to recover the acquisition value of the land it was required by contract to donate to the county for the stadium site. Plaintiff's appraiser testified that the preconstruction value of the stadium site was $580,000. Defendant requested that the court instruct the jury to subtract this amount from the postconstruction value of the peripheral land. The court

refused this request and charged the jury to calculate damages, if any, by subtracting the fair market acquisition value of the Kenford land from the fair market postconstruction value. The court should have charged the jury according to defendant's request. However, if the value of the land for the stadium site was subtracted from the postconstruction value of the peripheral land, it would reduce plaintiff's estimate of lost appreciation from $14 million to $13,420,000. Because the jury awarded only $6.5 million, we cannot say that, in the course of its deliberations, the jury did not deduct this amount to arrive at their final figure. The court did not tell the jury that they could not deduct the acquisition cost of the stadium site from the postconstruction value of the land, so, in our view, reversal is not required. The jury verdict was well within the range of the expert testimony.

Finally, we note that the court did not abuse its discretion in awarding plaintiff interest on the verdict back to August 8, 1970. CPLR 5001 (a), (b) provide that prejudgment interest must be awarded in breach of contract actions, computed "from the earliest ascertainable date the cause of action existed". The Erie County Legislature voted to abandon the Dome Stadium project on August 8, 1970, and this became the earliest ascertainable date that plaintiff's breach of contract action existed.

We have examined the remaining issues raised by defendant and determine that they lack merit.

Doerr, J. P., Balio and Davis, JJ., concur; Boomer and Lawton, JJ., concur in the following memorandum.

Boomer and Lawton, JJ. (concurring). Were we not bound by the law of the case, we would vote to dismiss plaintiff's claim for loss of anticipated profits from its land near the stadium site. We do not believe that at the time the contract was entered into both parties fairly contemplated that, in the event of a breach, plaintiff was to receive damages for the loss of its opportunity to profit by the anticipated appreciation in value of its nearby land *(see, Kenford Co. v County of Erie,* 67 NY2d 257, 261, 262). Moreover, in our opinion, the damages were remote and not directly traceable to the breach *(see, Kenford Co. v County of Erie, supra,* at 261). Since there was no obligation on plaintiffs part to acquire or develop the peripheral land, any loss of profit from the purchase and development of that land can only be said to be the result of " 'collateral engagements entered into on the faith and in expectation of the performance of the principal contract' "

*(Wakeman v Wheeler & Wilson Mfg. Co.,* 101 NY 205, 210), and is not recoverable. (Appeals from judgment of Supreme Court, Erie County, Fudeman, J.—damages.) Present—Doerr, J. P., Boomer, Balio, Lawton and Davis, JJ.