MERLITE INDUSTRIES, INC., Plaintiff–Appellant–Cross–Appellee,

v.

VALASSIS INSERTS, INC., Defendant–Appellee–Cross–Appellant.

Nos. 331, 511, Dockets 93–7305, 93–7337.

United States Court of Appeals, Second Circuit.

Argued Sept. 20, 1993.

Decided Dec. 20, 1993.

Jay D. Lukowski, New York City (Murray L. Skala, Bruce Robins, Feder, Kaszovitz, Isaacson, Weber & Skala, of counsel), for plaintiff-appellant.

Michael Murphy, New York City (Robert P. Devlin, James B. Blaney, Andrew D. Manitsky, Reboul, MacMurray, Hewitt, Maynard & Kristol, of counsel), for defendant-appellee.

Before: VAN GRAAFEILAND, WALKER and JACOBS, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Merlite Industries, Inc. appeals from a judgment of the United States District Court for the Southern District of New York (Martin, J.) awarding it $16,808 for its out-of-pocket expenses caused by Valassis Inserts, Inc.'s breach of contract. Merlite's appeal is limited to the district court's dismissal on motion of its claim for lost profits. Valassis cross-appeals from the entire judgment. We affirm the finding of liability and the award of out-of-pocket expenses. We vacate the district court's summary dismissal of Merlite's claim for lost profits and remand the matter to the district court for trial on that issue only.

Merlite, which has been in business for over forty years, specializes in selling costume jewelry through the mail. Its marketing strategy is based predominantly on direct mail and advertising, including the mass distribution of "advertising pieces." One of the more common methods of distributing the advertising pieces is through "free standing inserts" ("FSIs"), the colored pages of coupons and advertisements that are inserted in Sunday newspapers. Valassis is in the FSI distribution business and had done satisfactory work for Merlite prior to the transaction at issue. The present controversy arises out of a contract between Merlite and Valassis in which Valassis allegedly agreed to distribute eight million advertising pieces for Merlite between January and April of 1989. Valassis did not fulfill its commitment, and Merlite sued. Its complaint demanded damages for both out-of-pocket expenses and lost profits. Prior to trial, Valassis moved for summary dismissal of the claim for lost profits. The district court granted the motion because, it said, Merlite's claim for lost profits could not be proven with reasonable certainty. *See Merlite Industries v. Valassis*, 89 C.V. 3848 (JSM), 1992 WL 197390 (August 3, 1992). Because the parties stipulated the amount of Merlite's out-of-pocket expenses, the jury was asked to decide only the issue of breach of contract, which it decided in Merlite's favor.

In reversing a district court's grant of summary judgment, we consider *de novo* whether there is a genuine issue of material fact. In so doing, we view the record in the light most favorable to the non-moving party. *Viacom International, Inc. v. Icahn*, 946 F.2d 998, 1000 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1244, 117 L.Ed.2d 477 (1992). Viewed in this manner, the record in the instant case indicates that Merlite was prepared to prove the facts hereinafter summarized.

Merlite's advertising of the nature at issue herein does not invite potential customers to buy jewelry; instead it invites potential customers to request more information about Merlite jewelry. Merlite refers to the first step of requesting additional information as an "inquiry." Merlite keeps careful track of inquiries and sends catalogues and additional solicitations to those people who have made inquiries. If an inquiry blossoms into a purchase, the inquirer is listed as a buyer and his name is placed on another list, which triggers mailings inviting follow-up purchases.

Because the principal manner in which a person becomes a Merlite customer is by responding to a Merlite advertisement and requesting more information, Merlite carefully monitors the effectiveness of its advertising programs. Each program receives a unique designation code so that the result of that particular program can be traced. In addition, different codes are used for different months of the year so that the seasonal effect also can be gauged. Accordingly, Merlite has detailed statistics for its advertising programs which show exactly how many inquiries each program generated, how many inquiries turned into purchases, how many purchasers became repeat purchasers in what Merlite labels "follow-up sales," and the average sale per buyer.

Merlite performed a study in the mid 1980's analyzing the purchasing history of Merlite buyers over a two year period. This study formed the basis of Merlite's figures for its loss of profits from follow-up sales. Finally, Merlite maintains two mailing lists, one with the names of purchasers, the second with the names of those who have made follow-up purchases. Merlite rents these lists to other direct-mail companies. Due to the detailed nature of its statistics, Merlite was able to divide its claim for lost damages into three distinct categories: lost initial sales; lost follow-up sales and lost revenue from selling customers' names to other mailing lists.

Based on its detailed records of the results from a virtually identical 1988 Valassis distribution, its sales history and expert testimony, Merlite offered an itemized calculation of each element of its damage claim and revealed the method by which its figures were calculated as well as the assumptions on which its projections were based. These calculations indicated how many inquiries were expected to result from the distribution of the eight million inserts. From that figure, based on a similar return rate supported by sales history, Merlite calculated the number of buyers that the Valassis advertising program would have generated and the amount the average buyer would be expected to purchase. Merlite multiplied its lost purchaser

figure by its average sales figure to arrive at a lost gross sales figure, which it reduced by its gross costs to establish the gross profit that it allegedly lost. Although Merlite's analysis, of course, is subject to attack, each step is based on established, provable figures of past performance. Merlite performed similar calculations to account for its lost follow-up sales figure. In addition, based on its figures for lost responses, Merlite calculated how many names it failed to add to its mailing lists and accordingly calculated a figure for lost revenue from the mailing lists.

In holding that Merlite's proposed evidence did not suffice to go to a jury, the district court appears to have decided disputed issues of fact rather than to have determined whether there were genuine issues of material fact to be tried. For example, the district court does not state in its summary judgment decision that Merlite's evidence is insufficient as a matter of law; it states that the inferences Merlite would ask a jury to draw are "inconceivable," and that other conclusions are just as "likely." If other conclusions are just as likely, it follows that the issue is one which may be "reasonably resolved in favor of either party" and thus is inappropriate for summary resolution. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The district court concluded that Merlite had saturated the market and therefore could not conceivably have lost customers through Valassis' failure to distribute the inserts. That conclusion also constitutes the determination of a factual issue. Valassis offered evidence of a saturation theory to counter Merlite's damage claim. Specifically, Valassis produced evidence that Merlite's profits for the year in question had exceeded those of its previous years and that, through other advertising methods, Merlite had contacted the same customers it claimed to have lost as a result of defendant's breach. Valassis offered support for its saturation theory with evidence that, even without the Valassis pieces, Merlite had sent out more advertisements than it had planned for the advertising

period involved. To counter this market saturation theory, Merlite offered statistical evidence of consistent response rates to its varied advertising programs, contending that the "assumption[ ] .... that additional advertising by Merlite would not have yielded additional sales, is contrary to Merlite's extensive experience."

In rejecting Merlite's contention, the district court said:

Given the fact that most households in the United States were awash with Merlite inserts, the inserts that Valassis failed to distribute would have been no more than a drop in a well-filled bucket and their absence would have had little long range effect on Merlite's business. Thus, Merlite's contention that certain buyers were lost "forever" because they did not receive inserts in January or February of 1989 strains credulity.

We view the district court's word choice of "strains credulity" as an indication that it was performing a task properly belonging to the fact-finder. It was for the jury to determine whether "most households in the United States were awash with Merlite inserts," and what effect, if any, this unlikely state of affairs would have had on Merlite's sales.

■ The governing standard in this diversity action is provided by *Kenford Co. v. County of Erie,* 67 N.Y.2d 257, 260, 502 N.Y.S.2d 131, 493 N.E.2d 234 (1986) (*Kenford I* ). Under this standard, a party may recover lost profits if (1) its alleged lost profits were caused by the breach; (2) the "damages were fairly within the contemplation of the parties" when contracting; and (3) the damages can be proven with a reasonable certainty. *Id.*

■ Merlite was prepared with sufficient evidence to reach the jury on this claim. First, a reasonable jury could conclude that the lost profits were caused by the breach. Second, a jury could conclude that all three components of Merlite's damages claim were fairly within the contemplation of the parties.

*See Kenford Co. v. County of Erie,* 73 N.Y.2d 312, 319, 540 N.Y.S.2d 1, 537 N.E.2d 176 (1989) (*Kenford II* ) ("In determining the reasonable contemplation of the parties, the nature, purpose and particular circumstances of the contract known by the parties should be considered ... as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.' ").

Finally, Merlite's proposed proof of lost profits was of sufficient certainty to make a jury question. Courts addressing the issue of damages based on loss of profits have distinguished between established businesses and fledgling businesses, allowing the claims of the former to be supported by evidence of past performance. *See, e.g., Greasy Spoon Inc. v. Jefferson Towers, Inc.,* 75 N.Y.2d 792, 795–96, 552 N.Y.S.2d 92, 551 N.E.2d 585 (1990) (mem.). An established business often is in a good position to offer evidence of past experience as a reasonable basis from which a jury may determine lost profits with the requisite degree of certainty. For example, in *Greasy Spoon,* the New York Court of Appeals upheld a jury award for loss of profits in a breach of contract case involving a sidewalk cafe. The Court of Appeals held that the evidence of the past experience and profits of the established restaurant to which the cafe would be attached was sufficient "to remove plaintiff's lost profit claim from the realm of impermissible speculation." *Id.* at 796, 552 N.Y.S.2d 92, 551 N.E.2d 585.

In support of its claim for lost profits, Merlite, an established business, offered statistical evidence of its past performance in a remarkably similar advertising program. Its proof was of the type held to be sufficient by the New York Court of Appeals in *Greasy Spoon* and by this Court in *Care Travel Co. v. Pan American World Airways, Inc.,* 944 F.2d 983, 993–95 (2d Cir.1991). It presented genuine issues of material fact which the jury should have been permitted to resolve.

Valassis' cross-appeal requires little comment. Valassis failed to supplement its an-

swers to Merlite's interrogatories by disclosing the identity of its expert witnesses. In a joint pretrial order dated February 12, 1993, which was approximately three weeks before the commencement of trial, Valassis listed four such witnesses. Merlite moved at the start of trial to exclude all four witnesses based on Valassis' violation of Fed.R.Civ.P. 26(e) and the consequent failure to provide adequate time for pretrial depositions. The district court excluded one of the witnesses but allowed the other three to testify because they had been identified earlier as "fact witnesses." Valassis contends that it was unfairly prejudiced by the district court's decision to exclude the fourth. It says that the expert would have testified concerning industry practice of not guaranteeing the existence of sufficient "remnant space," i.e., space not purchased by national manufacturers, to handle inserts of vendors such as Merlite. However, the existence of this industry practice was testified to at length by Valassis' other witnesses and never was in dispute.

The district court noted the substantial testimony concerning remnant space when it stated that the jury knew "enough about remnant space ... [p]robably more than the jury would ever want to know." The issue was not whether it was industry practice not to guarantee remnant space but whether, after the meeting between Valassis and Merlite in which Merlite's dissatisfaction with missed deadlines was expressed, Valassis had, in effect, agreed to depart from industry practice and guarantee a particular set of Merlite orders. The jury found that Valassis had so agreed. Given that the imposition of sanctions for violations of Rule 26(e) is within the trial court's discretion, and that the substance of the testimony which was excluded not only was otherwise introduced but also essentially was undisputed, the district court committed no prejudicial error in excluding the testimony of one of Valassis' four experts.

That part of the judgment below which awards Merlite $16,808 with interest is affirmed. The district court's summary dismissal of Merlite's claim for lost profits is vacated and the matter is remanded to the district court for trial on this issue.

Costs to Merlite Industries, Inc.