GALLOPING, INC., Plaintiff,

v.

QVC, INC., Defendant.

No. 97 Civ. 4554(MGC).

United States District Court,
S.D. New York.

Nov. 23, 1998.

Shapiro, Forman & Allen LLP, New York City, by Michael I. Allen, for plaintiff.

Cozen and O'Connor, Philadelphia, PA, by Thomas C. Zielinski, and Cozen and O'Connor, New York City, by John F. Parker, for defendant.

## OPINION AND ORDER

CEDARBAUM, District Judge.

After a four day trial, a jury found QVC liable to Galloping, Inc. ("Galloping") in the amount of $200,000 for breach of a Licensing Agreement. QVC moves pursuant to Fed. R.Civ.P. 50(b) for judgment as a matter of law, and, in the alternative, pursuant to Fed. R.Civ.P. 59(e) to amend the judgment as contrary to law. Galloping moves pursuant to Rule 59(e) to amend the judgment to include prejudgment interest. For the reasons that follow, QVC's motion is denied and Galloping's motion is granted.

## DISCUSSION

1. QVC's Rule 50(b) Motion

QVC contends, as it did at trial, that it is entitled to judgment as a matter of law because a condition precedent to its obligations under the parties' Licensing Agreement ("the Agreement") did not occur. QVC argues that the Agreement remained ineffective until Galloping, as Licensor, provided QVC with written notice that the Licensor was released, pursuant to a bankruptcy court-approved agreement, from its obligations under a prior licensing agreement. Because Galloping never provided notice of a court-approved release, QVC argues that an essential condition of QVC's obligations under the Agreement was not met and QVC accordingly was not bound to perform under the Agreement.

Section 1(a) of the Agreement, however, clearly provides that the Agreement becomes effective upon "the date that Licensor provides written notice to QVC that neither Licensor nor its predecessor have any further duties or obligations" under the prior licensing agreement. Galloping provided such notice on September 12, 1995 and thereby triggered QVC's obligations under the Agreement.

QVC also appears to contend that its performance under the Agreement was conditioned on the performance of a separate agreement by another company, Universal Chef. At trial, QVC did not move for judgment as a matter of law on this ground, but argued instead that Universal Chef's failure to perform rendered QVC's performance impossible. A motion pursuant to Rule 50(b) is limited to those grounds specifically raised in a prior motion for a directed verdict. *Lambert v. Genesee Hosp.*, 10 F.3d 46, 54 (2d Cir.1993); *Mason v. City of New York*, 949 F.Supp. 1068, 1073 (S.D.N.Y.1996). Because QVC did not argue at trial that performance by Universal Chef was a condition precedent to its performance under the Agreemeent, it may not make that argument now in a Rule 50(b) motion. In any event, the argument is without merit. QVC points to no provision of the Agreement that conditions QVC's duties under the Agreement upon the performance by Universal Chef of its separate agreement.

2. QVC's Rule 59(e) Motion

QVC moves in the alternative pursuant to Rule 59(e) for an order reducing the amount of the judgment from $200,000 to

$50,000. According to QVC, there was insufficient evidence to support any award of lost profits. Therefore, QVC maintains that Galloping was entitled only to $50,000, the amount obtained by subtracting Galloping's $100,000 damages mitigation from the $150,000 advance royalties provided for by the Agreement. QVC claims that the remaining $150,000 portion of the damage award, which represents Galloping's lost profits, is insufficiently supported by the evidence.

It is undisputed that in order to award damages in the amount of $200,000, the jury had to have found that the sales of the products at issue would have been $10 million if QVC had performed under the Agreement. QVC argues that there was no reasonable basis upon which to estimate lost sales of $10 million, particularly in light of the fact that the sales of the products at issue had never exceeded $2 million per year. QVC also notes that after it did not perform under the Licensing Agreement, Galloping entered into an agreement with another company that resulted in annual sales of only $1 million.

■ Under New York law, lost profits may be recovered if it is first demonstrated that such damages have been caused by the breach, the alleged loss is capable of proof with reasonable certainty, and the damages were within the contemplation of the parties at the time the contract was made. *Ashland Management, Inc. v. Janien*, 82 N.Y.2d 395, 404, 604 N.Y.S.2d 912, 916, 624 N.E.2d 1007 (1993); *Kenford Co., Inc. v. County of Erie*, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234 (1986); *see also Care Travel Co., Ltd. v. Pan American World Airways, Inc.*, 944 F.2d 983, 994 (2d Cir.1991). Here, the Agreement specifically provided for the payment of profits in the form of royalties to Galloping. Moreover, there was a reasonable basis upon which the jury could find lost sales in the amount of $10 million. There was evidence that the president of QVC had told Galloping that he believed that QVC would sell $15 million of the products at issue in the first year of the Licensing Agreement. There also was evidence that another QVC employee estimated sales of between $40 million and $65 million after three years, and that QVC had extensive experience marketing products of the type at issue. Moreover, there was evidence that the prior Galloping licensee had sold about $45 million in a two and a half year period from 1992 to 1994. Finally, there was evidence that QVC intended to sell an expanded range of Galloping products. Taken together, this evidence was sufficient to support the jury's verdict. *See Care Travel*, 944 F.2d at 994 (upholding award of lost profits based on past actual sales); *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 852 (2d Cir.1987) (upholding award of lost profits based in part on defendant's own projections); *see also Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir.1992) (reversing order that set aside verdict awarding lost profits, where profits award was supported by defendant's own estimates). In addition, the fact that the jury's verdict fell somewhere between the minimal award of $50,000 that QVC urged and Galloping's request for $350,000 "gives rise to an inference that the jury considered both parties' arguments and attempted to arrive at a reasonable estimate" of Galloping's damages. *Care Travel*, 944 F.2d at 995.

3. Galloping's Rule 59(e) Motion

Galloping moves to amend the judgment to include prejudgment interest pursuant to CPLR § 5001(a), which the parties agree applies to this diversity action. It is undisputed that Galloping is entitled to prejudgment interest on the amount attributable to advance royalties. The parties agree that the amount attributable to advance royalties consists of $150,000 from October 2, 1995 to January 1, 1996, and $50,000 from January 2, 1996 to the date of judgment, since Galloping mitigated its damages on January 1, 1996 when it received a $100,000 advance royalty payment from another party.

■ The present dispute centers on whether Galloping is entitled to prejudgment interest from September 12, 1996 (the date on which the term of the Agreement expired) to August 11, 1998 (the date of judgment) on the $150,000 portion of the award that is attributable to lost profits. QVC contends that Galloping is not entitled to any prejudgment interest on the $150,000 of lost profits because that amount was not "readily ascer-

tainable" at a fixed date prior to entry of judgment. QVC relies on *Rogerson Aircraft Corp. v. Fairchild Indus., Inc.*, 632 F.Supp. 1494 (C.D.Cal.1986) and *S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F.Supp. 1014 (S.D.N.Y.1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985). In *Harmonay*, the court granted prejudgment interest on an award of lost profits and damages for labor inefficiency, uncompensated overhead, and various labor, material, and field costs arising from delay in performance of a construction contract. *Harmonay*, 597 F.Supp. at 1036. *Rogerson*, which purported to apply New York law, held that the plaintiff was not entitled to prejudgment interest on an award for lost profits arising from the defendant's breach of contract. *Rogerson*, 632 F.Supp. at 1506. *Rogerson* distinguished *Harmonay* on the ground that in *Harmonay*, the plaintiff's damages "were calculated based on costs actually incurred and therefore fixed well before judgment.... [P]laintiff's damages were readily ascertainable by the defendant prior to trial by reference to an objective standard." *Id.*

*Rogerson's* description of *Harmonay* is inaccurate, however, because in the latter case more than half of the plaintiff's damages—those for labor inefficiency—were not ascertained until the court made its post-trial findings of fact and conclusions of law. *Harmonay*, 597 F.Supp. at 1030. Moreover, as another decision of this court has noted, *Rogerson* "articulated its 'test' by utilizing principles of California law because it found a dearth of relevant New York cases." *Record Club of America, Inc. v. United Artists Records, Inc.*, 701 F.Supp. 71, 72 (S.D.N.Y.1988) (granting prejudgment interest on award based on lost profits).

The Second Circuit has applied New York law to grant prejudgment interest on awards of lost profits. In *U.S. Naval Institute v. Charter Communications, Inc.*, 936 F.2d 692 (2d Cir.1991), the defendant breached its contract with the plaintiff by shipping a paperback version of plaintiff's book earlier than agreed. The plaintiff claimed lost profits on sales of its hardcover version of the book as a result of the defendant's breach. The district court calculated plaintiff's lost profits to be $35,380.50 and awarded prejudgment interest on that sum. *U.S. Naval Institute*, 936 F.2d at 697–98. The Court of Appeals affirmed. *Id.* at 698. *See also Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 93 (2d Cir.1984) (granting prejudgment interest on award of lost profits arising from breach of contract). Accordingly, Galloping is entitled to prejudgment interest on the $150,000 portion of the award attributable to lost profits.

## CONCLUSION

For the foregoing reasons, QVC's motion for judgment as a matter of law or in the alternative to amend the judgment is denied, and Galloping's motion to amend the judgment to include prejudgment interest is granted. QVC is ordered to pay Galloping prejudgment interest on $150,000 from October 2, 1995 to January 1, 1996, prejudgment interest on $50,000 from January 2, 1996 to September 11, 1996, and prejudgment interest on $200,000 from September 12, 1996 to August 11, 1998.

SO ORDERED.