BRITESTARR HOMES INC.,
Plaintiff–Appellant,

v.

PIPER RUDNICK LLP, Defendant–
Appellee.

No. 06–4959–bk.

United States Court of Appeals,
Second Circuit.

Dec. 4, 2007.

Michael A. Caddell, Caddell & Chapman (Jay L. Westbrook, Cynthia B. Chapman, Gregory K. Evans and Dana B. Levy, on the brief), Houston, TX, for Appellant.

James P. Ulwick, Tyler Cooper & Alcorn, LLP (William S. Fish, Jr., Kevin F. Arthur, Jean E. Lewis, Kramon & Graham, P.A., on the brief), New Haven, CT, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. B.D. PARKER, and Hon. RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Plaintiff–Appellant Britestarr Homes Inc. appeals from an order granting summary judgment to Defendant–Appellee Piper Rudnick LLP, entered in the District of Connecticut (Underhill, *J.* ) on September 29, 2006, 453 F.Supp.2d 521. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Britestarr asserts five causes of action said to arise out of Piper's recommendation that Britestarr file for bankruptcy in May 2002: breach of fiduciary duty, aiding and abetting same, civil conspiracy, professional malpractice, and tortious interference with business relations.

We review *de novo* the district court's grant of summary judgment. *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998). In doing so, we construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Maguire,* 147 F.3d at 235. Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Britestarr's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, and professional malpractice all require proof of damages. Even assuming, *arguendo,* that Piper committed errors in its representation, Britestarr has failed to create a triable issue of fact under any of its several damages theories.

■ As to the difference between the value of Britestarr's property in bankruptcy (according to its plan of reorganization) and its value outside of bankruptcy: The reorganization plan is a means of satisfying Britestarr's creditors after it had become insolvent; it is not a measure of the market value of Britestarr's property. Thus, Britestarr failed to create a triable issue of fact with regard to its claim for damage to the value of its property as a result of the bankruptcy proceeding.

■ As to the amount of lost profits from a power plant that was to have been built on Britestarr's property: The expert report from Dr. Lynda Borucki measured lost profits on the improperly speculative assumptions that "the Oak Point Power project would have had a developer, that it would have been permitted, obtained financing and been constructed, thereby generating cash flows to Britestarr as con-

templated by [t]he Option Agreement [with ABB]." *See Kenford Co. v. Erie County,* 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 493 N.E.2d 234 (1986) (holding that damages based on lost future profits "may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes"). Dr. Borucki's assumptions include that a hypothetical power plant developer would have secured $1 billion in debt and equity financing in time to start construction in December 2003; that the debt financing would have entailed a loan of $740 million at 7.25% interest; and that the developer would have entered into a construction contract for the plant.

As to Piper's disbursement of funds from the corporate escrow account directly to David Norkin, Britestarr's president, the expert report by Professor Geoffrey Hazard raises issues as to the absence of certain formal requirements. But we concur with the District Court's conclusion that any such deficiencies caused Britestarr no harm. Norkin was president of Britestarr, and had complete control over Britestarr's accounts (which Professor Hazard conceded at his deposition); and Norkin himself conceded at his deposition that if Piper had imposed the requirements Hazard described, he would have complied.

Finally, Britestarr's claim for tortious interference with business relations fails to identify any business relationship that was damaged by Piper's alleged errors. The record reflects that Norkin was adamant that he would not accept ABB's attempt to extend its option rights and Britestarr has not offered any other proof in admissible form as to any other offers for the property.

We have reviewed Britestarr's remaining claims and find them to be without merit.

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED.**