Stein, J.
Cross appeals from an order of the Supreme Court (Lebous, J.), entered June 30, 2011 in Broome County, upon a decision of the court partially in favor of plaintiff.
In late 2004, plaintiff executed an asset purchase agreement (hereinafter APA) to sell his veterinary practice located in the Town of Vestal, Broome County to defendants.[1] Defendants financed the purchase, in part, through a personally guaranteed promissory note in the amount of $400,000, which called for monthly payments, with 5% interest. Defendants began managing and operating the practice in January 2005. However, it was contemplated that plaintiff would continue to perform occasional veterinary services for the practice.
In late March 2005, plaintiff was arrested and charged in Virginia with the crime of soliciting sex from a person over the Internet who he had reason to believe was a minor.[2] Because plaintiff had been a well-known veterinarian in the Broome County area, his arrest was covered by the local news, and his connection to the veterinary practice was specifically mentioned. Defendants failed to make the April and May 2005 payments on the promissory note, prompting plaintiff to declare defendants in default and accelerate the note. Defendants eventually made such payments and continued to make payments thereafter until April 2007, when they ceased payments altogether.
Plaintiff thereafter commenced this action to recover, among other things, the amount outstanding on the promissory note. Defendants answered and interposed a counterclaim alleging that plaintiffs arrest constituted a material breach of the APA and sought, among other things, damages for loss of the goodwill and revenue occasioned by plaintiffs conduct. Following a nonjury trial, Supreme Court determined that plaintiff had breached the APA and awarded damages to defendants on their counterclaim in the amount of $89,030, representing lost profits sustained by the practice. Supreme Court also awarded plaintiff the amount due from defendants on the promissory note — to be offset by the $89,030 in damages that defendants sustained— and denied the parties’ demands for certain interest payments, late payments and counsel fees. The parties now cross-appeal.
Upon review of a nonjury trial verdict, this Court “ ‘independently review[s] the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, *1080 and grant[s] the judgment warranted by the record’ ” while according due deference to the trial court’s factual findings and credibility determinations (Ash v Bollman, 80 AD3d 1115, 1117 [2011], quoting Short v State of New York, 75 AD3d 1035, 1036 [2010]; see Haber v Gutmann, 64 AD3d 1106, 1107 [2009], lv denied 13 NY3d 711 [2009]). Addressing first whether plaintiff breached the APA, it is beyond cavil that “a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms” (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009] [internal quotation marks and citation omitted]; see Stillwater Hydro Partners, LP v Stillwater Hydro Assoc., LLC, 100 AD3d 1455, 1456 [2012]; Ruthman, Mercadante & Hadjis v Nardiello, 260 AD2d 904, 906 [1999]).
As pertinent here, section V (A) of the APA provides, under the heading “Goodwill: Publicity,” that neither party would “intentionally take or omit to take any action . . . which could directly impair the goodwill of the [b]usiness or the business reputation or good name.” In our view, such provision is susceptible to only one reasonable interpretation (see Zinter Handling, Inc. v General Elec. Co., 101 AD3d 1333, 1335 [2012]; Currier, McCabe & Assoc., Inc. v Maher, 75 AD3d 889, 890 [2010]), namely, that any intentional act that could directly impair the goodwill of the practice would violate the APA. While plaintiff argues that he did not breach the APA because he did not intend his conduct to impair the goodwill of the practice, such an interpretation is contrary to the plain meaning of section V (A), and Supreme Court properly determined that the conduct that led to plaintiffs arrest and conviction constituted a breach of the APA.[3]
Supreme Court also correctly found that plaintiff’s breach entitled defendants to an offset against their obligation on the promissory note. A breach of a related contract is generally not a defense to nonpayment of an instrument for money only (see Ingalsbe v Mueller, 257 AD2d 894, 895 [1999]; A+Assoc. v Naughter, 236 AD2d 655, 656 [1997]). However, where the note and the contract are “inextricably intertwined” as part of the same transaction, a breach of the related contract may create a defense to payment on the note (Couch White v Kelly, 286 AD2d 526, 528 [2001] [internal quotation marks and citation omitted]; see Ingalsbe v Mueller, 257 AD2d at 895; A+Assoc. v Naughter, 236 AD2d at 656; see also Lorber v Morovati, 83 AD3d 799, 800 [2011]; Vecchio v Colangelo, 274 AD2d 469, 471 [2000]).
*1081 Here, the promissory note was executed contemporaneously with the APA and represented partial consideration for the assets purchased by defendants. The APA specifically refers to the promissory note, and a copy of the note was attached thereto (see Ingalsbe v Mueller, 257 AD2d at 895). Further, the note does not include any waiver of the right to an offset for counterclaims. Inasmuch as we find the parties’ rights and obligations set forth in the note and APA to be inextricably intertwined (see id. at 895), we agree with Supreme Court’s determination that, as a result of plaintiff’s breach of the APA, defendants were entitled to offset their obligations due under the promissory note against any damages caused by plaintiff’s breach.[4] Additionally, because the note and the APA were inextricably intertwined, defendants’ suspension of payments on the note following plaintiff’s breach of the APA did not cause them to be in default. Thus, we also concur with Supreme Court that plaintiff is not entitled to recover counsel fees, late fees or an increase in the applicable interest rate under the terms of the note.
On the other hand, we find merit to defendants’ argument that plaintiff was not entitled to accelerate the balance due on the promissory note. Although the express terms of the note permit acceleration upon defendants’ failure to make payments in a timely manner, Supreme Court ultimately determined that they were justified in suspending payments in order to maintain the status quo until the parties’ respective obligations could be determined. In view of our finding that plaintiffs breach of the APA created a defense to defendants’ obligations under the note and justified their suspension of payments, acceleration was not appropriate and damages should be recalculated, accordingly.
Turning to the damages sought by defendants on their counterclaim, in order to recover lost profits, they had the burden of proving that the “damages were actually caused by the breach, that the ‘particular damages were fairly within the contemplation of the parties to the contract at the time it was made’ and that the alleged loss is ‘capable of proof with reasonable certainty’ ” (Awards.com v Kinko’s, Inc., 42 AD3d 178, 183 [2007], affd 14 NY3d 791 [2010], quoting Kenford Co. v County of Erie, 67 NY2d 257, 261 [1986]; see Latham Land I, LLC v *1082 TGI Friday’s, Inc, 96 AD3d 1327, 1333 [2012]). “The rule that damages must be within the contemplation of the parties is a rule of foreseeability. The party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made” (Ashland Mgt. v Janien, 82 NY2d 395, 403 [1993]; see Kenford Co. v County of Erie, 67 NY2d at 261; Wathne Imports, Ltd. v PRL USA, Inc., 101 AD3d 83, 87 [2012]; Crystal Clear Dev., LLC v Devon Architects of N.Y., P.C., 97 AD3d 716 [2012]).
Here, while the APA is silent with respect to damages, we apply a “commonsense rule” to determine “what the parties would have concluded had they considered the subject” (Kenford Co. v County of Erie, 67 NY2d at 262; see Ashland Mgt. v Janien, 82 NY2d at 404). Notably, a substantial portion of the purchase price of the practice was expressly attributable to goodwill. A purchaser of goodwill “ ‘acquires the right to expect that the firm’s established customers will continue to patronize the business’ ” (Bessemer Trust Co., N.A. v Branin, 16 NY3d 549, 557 [2011], quoting Mohawk Maintenance Co. v Kessler, 52 NY2d 276, 285 [1981]). Considering the “nature, purpose and particular circumstances of the contract” (Kenford Co. v County of Erie, 73 NY2d 312, 319 [1989]), we agree with Supreme Court that lost profit damages were foreseeable by the parties at the time they executed the APA.
We reject plaintiffs challenge to Supreme Court’s determination that the alleged loss of revenue was caused by plaintiffs breach and that the damages were proved with reasonable certainty. Defendants submitted proof that, after they began operating the practice, the practice experienced an increase in gross revenue of 8.45% in February 2005 and 4.65% in March 2005, consistent with industry trends and with their expectations. However, almost immediately after plaintiffs arrest in March 2005, the practice’s revenue abruptly declined and consistently followed a downward track for the months that followed. Defendants’ expert, Gary Glassman — a certified public accountant who specializes in evaluating veterinary practices— stated that, by March 2006, the practice experienced a 15.84% decrease in revenue compared to the prior year, and calculated lost profits between April 2005 and March 2006 to be $89,030.
Plaintiffs arrest and conviction were publicized in the community where the practice was located, plaintiff was identified in the news broadcasts as either the owner or former owner of the practice and, in fact, the news of his arrest was broadcast from its parking lot. In order to maximize their purchase of the goodwill of the practice, defendants had elected not to inform *1083 existing clients of the change in ownership or that plaintiff had departed from the practice prior to his arrest, making it even more likely that existing customers linked the negative publicity to the practice. Plaintiffs own testimony established that he had invested years in familiarizing the community with himself as the face of the practice and he admitted that the publicity surrounding his arrest and conviction potentially had a negative impact on the practice.
Nonetheless, plaintiff submitted evidence that various changes were made by defendants to the management of the practice and asserts that these changes could have negatively affected its revenue. In addition, plaintiffs expert, James Leonard — a certified public accountant — concluded that there was no direct evidence connecting any lost revenue to plaintiffs arrest, as there was no testimony or documentation directly establishing that any particular client or clients left the practice as a result thereof. However, defendants denied that the alleged management changes were instituted and, while Glassman conceded that such changes, if they did take place, could possibly affect the revenue of the practice, he did not attribute the drastic and immediate decrease in revenue that occurred here to such changes. This testimony created clear questions of credibility, best resolved by the trial court. Under all the circumstances, we conclude that defendants proved to a reasonable certainty that such decrease in revenue was caused by plaintiffs arrest (see Celebrity Cruises Inc. v Essef Corp., 478 F Supp 2d 440, 447-452 [SD NY 2007]; Wathne Imports, Ltd. v PRL USA, Inc., 101 AD3d at 88-89; compare Kantor v 75 Worth St., LLC, 95 AD3d 718, 719 [2012]). Moreover, plaintiff failed to offer any proof that would establish the extent, if any, to which any efforts by defendants to mitigate damages would have prevented such damages (see Cornell v T.V. Dev. Corp., 17 NY2d 69, 74 [1966]; LaSalle Bank N.A. v Nomura Asset Capital Corp., 47 AD3d 103, 107 [2007]).
However, we are unpersuaded by defendants’ challenge to Supreme Court’s rejection of the use of a multiplier to determine the overall loss in the value of the practice attributable to plaintiffs arrest. The accuracy of the multiplier used by Glass-man — which was supplied by defendant Lance Sprinkle — was not verified by any outside source or by Glassman. Furthermore, all of the evidence presented regarding defendants’ damages was confined to the one-year period between plaintiffs arrest and conviction, and defendants presented no evidence that the lost profits during that period were indicative of an overall decrease in the value of the practice. In fact, the evidence *1084 showed that revenue increased after plaintiffs conviction. According deference to Supreme Court’s credibility determinations, we find no reason to disturb that court’s conclusion that Glassman’s use of a multiplier to forecast future losses attributable to plaintiffs arrest was not supported by the record.
Finally, we agree with defendants’ contention that they were entitled to prejudgment interest on the damages caused by plaintiffs breach of the APA (see CPLR 5001 [a]; J. D'Addario & Co., Inc. v Embassy Indus., Inc., 20 NY3d 113, 117-119 [2012]). Likewise, plaintiff was entitled to 5% interest on defendants’ outstanding obligation as called for in the promissory note. In light of our decision, we remit to Supreme Court for the calculation of appropriate judgments.
To the extent not specifically addressed herein, we have examined the parties’ remaining contentions and find them to be without merit.
Rose, J.E, Spain and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as accelerated the promissory note and declined to award interest to both parties; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed. [Prior Case History: 32 Misc 3d 1231(A), 2011 NY Slip Op 51518(U).]

. The total purchase price was $1,700,000, which included $600,000 for real estate, $908,000 for goodwill, $92,000 for inventory and equipment and $100,000 for the trade name and a noncompete agreement.

. Plaintiff was subsequently convicted of that crime in February 2006 (see Va Code Ann § 18.2-374.3 [B]).

. We also agree with Supreme Court that section X (A) (a) (5) of the APA, falling under the noncompetition agreement clause, was inapplicable here.

. However, because plaintiffs breach of the APA was not “ ‘so substantial that it defeat[ed] the object of the parties in making the contract’ ” (Robert Cohn Assoc., Inc. v Kosich, 63 AD3d 1388, 1389 [2009], quoting Frank Felix Assoc., Ltd. v Austin Drugs, Inc., Ill F3d 284, 289 [1997]), we reject defendants’ claim that they were relieved of all outstanding obligations under the promissory note.