■ OLSENHAUS PURE VEGAN, LLC, Appellant-Respondent, v ELECTRIC WONDERLAND, INC., Doing Business as SHOWROOM SEVEN, Respondent-Appellant. [983 NYS2d 506]—

Order, Supreme Court, New York County (Anil C. Singh, J.), entered February 11, 2013, which, after a nonjury trial, held that defendant Electric Wonderland, Inc. doing business as Showroom Seven breached an agreement with plaintiff Olsenhaus Pure Vegan, LLC (Olsenhaus), denied Olsenhaus's request to recover lost profits, and awarded Olsenhaus damages in the amount of $17,000 representing "showroom rent" paid under the contract, unanimously modified, on the law, the damage award vacated, and otherwise affirmed, without costs.

Showroom Seven agreed to the terms of an addendum, by signing the agreement, which clearly states that "S7 agrees to terms of Addendum provided by Designer-page attached." A "writing should as a rule be enforced according to its terms" (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). To the extent two versions of the addendum were submitted, it is undisputed that the first paragraph of each version provides that Showroom Seven "agreed to represent, promote in every way possible and take orders for Designer, to reach growth in sales as discussed." The court's finding that defendant did not use "best efforts" to promote or to promote Olsenhaus's line

"in every way possible" (*see Olsenhaus Pure Vegan, LLC v Electric Wonderland, Inc.*, 2013 NY Slip Op 33621[U], \*6 [Sup Ct, NY County 2013]) was supported by a fair interpretation of the evidence (*Thoreson v Penthouse Intl.*, 179 AD2d 29, 31 [1st Dept 1992], *affd* 80 NY2d 490 [1992]).

Nevertheless, the court properly concluded that Olsenhaus was not entitled to recover lost profits. To the extent Olsenhaus seeks lost profits for a five-year period, such damages are speculative, as its assumption that it would have remained in contract with Showroom Seven for five years could not be established with reasonable certainty. To the extent it seeks lost profits in the amount of $1 million for 2010 (i.e., $500,000 for two seasons), such lost profits were not within the contemplation of the parties as a probable result of a breach at the time they entered into the agreement and could not be established with reasonable certainty (*see Kenford Co. v County of Erie*, 67 NY2d 257, 261 [1986]). The evidence surrounding the negotiation and execution of the contract does not show that the parties expected Showroom Seven to bear the responsibility for any lost profits sustained by Olsenhaus. Indeed, all the witnesses acknowledged that sales revenue of $500,000 per season was mere expectation, and Showroom Seven's principal testified that he would not guarantee minimum sales in his sales agreements, especially with emerging designers, as there were "too many variables involved in procuring success in sales in our very competitive and fickle industry." Such evidence undermines the conclusion that the parties contemplated that Showroom Seven would assume liability for Olsenhaus's loss of anticipated revenue (*see Kenford Co. v County of Erie*, 73 NY2d 312, 319-321 [1989]; *Awards.com v Kinko's, Inc.*, 42 AD3d 178, 183-185 [1st Dept 2007], *affd* 14 NY3d 791 [2010]).

The record also shows that it was not reasonably certain that Olsenhaus could have made $1 million in sales in 2010. Olsenhaus was an emerging brand and had been in the business for only 15 months before it entered into the agreement with Showroom Seven. Olsenhaus's and Showroom Seven's principals both describe the fashion industry as "fickle," and the evidence shows that success of a line depends on numerous factors, such as the economy, buyers' taste, market position, and price points (*see Kenford*, 67 NY2d at 262-263). Also, the profit history of Olsenhaus, an emerging eco-friendly clothing line, does not support a finding of projected profits of $1 million a year with reasonable certainty (*see Awards.com*, 42 AD3d at 185; *Zink v Mark Goodson Prods.*, 261 AD2d 105 [1st Dept 1999], *lv dismissed* 94 NY2d 858 [1999]).

The court erred in awarding Olsenhaus $17,000 representing "showroom rent" that Olsenhaus paid during the 5½-month relationship. The payment of showroom rent was not caused by the breach of contract, and the award of rent would not place it in as good a position as it would have been had the contract been performed (*Brushton-Moira Cent. School Dist. v Thomas Assoc.*, 91 NY2d 256, 261 [1998]). Concur—Tom, J.P., Acosta, Saxe, DeGrasse and Freedman, JJ.