CLIENTS' SECURITY FUND OF THE STATE OF NEW YORK, Appellant, v BARRY J. GRANDEAU, Defendant, and MICHAEL T. DAHOWSKI, Respondent.

Third Department, July 9, 1987

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Nancy A. Spiegel* of counsel), for appellant.

*Drake Sommers, Loeb, Tarshis & Catania, P. C. (Keith B. Rose* of counsel), for respondent.

### OPINION OF THE COURT

WEISS, J.

We are today called upon to determine the right of plaintiff, the Clients' Security Fund of the State of New York (the Fund), to recover sums paid to clients of a dishonest attorney who misappropriated or misapplied their funds or other property. In this unique case, the Fund seeks recovery not just from defendant Barry J. Grandeau, the dishonest attorney, but also from his former law partner, defendant Michael T. Dahowski. The Appellate Division, Second Department, in disciplinary proceedings brought against Dahowski, did not find him to have been dishonest, but did find that he failed to oversee or review the recordkeeping of his law firm, thereby contributing to the conversion by his law partner *(see, Matter of Grandeau,* 88 AD2d 628), and failed to maintain a ledger book or similar record in violation of that court's rules *(Matter of Dahowski,* 103 AD2d 354).

The Fund, which was created by act of the Legislature (State Finance Law § 97-t, as added by L 1981, ch 714, § 2) to provide reimbursement for law clients who sustain losses as the result of dishonest conduct of attorneys, approved 373 claims against Grandeau and made awards totaling $589,829. As a term of reimbursement, each claimant was required to execute an agreement subrogating and assigning to the Fund its rights against Grandeau, Dahowski, and the partnership (State Finance Law § 97-t [6]). The Fund, in turn, commenced this action pursuant to its rights of subrogation and assignment. Dahowski's motion for summary judgment dismissing the complaint as against him was granted (131 Misc 2d 673) giving rise to this appeal by the Fund.

Under circumstances prevailing in a usual commercial transaction, the general principles surrounding subrogation

would fully entitle the Fund as a subrogee to all of the rights, benefits and remedies otherwise available to any of the claimants victimized by Grandeau. In *United States Fid. & Guar. Co. v Smith Co.* (46 NY2d 498), then Associate Judge Wachtler wrote, "It is the very essence of subrogation that a subrogee stands in the shoes of the subrogor and is entitled to all of the latter's rights, benefits and remedies" *(supra,* at 504). The wrong flowing from the commission of a tort by a partner is imputable to all of his partners, jointly and severally, and an action may be brought against all or any of them in their individual capacities (Partnership Law §§ 24-26; *see, Pedersen v Manitowoc Co.,* 25 NY2d 412, 419; *see also,* Annotation, *Vicarious Liability of Attorney for Tort of Partner in Law Firm,* 70 ALR3d 1298). The Fund, therefore, as subrogee of Grandeau's former clients, would be entitled to pursue its remedy against Grandeau's law partnership and Dahowski, as the individual law partner. The complaint asserts separate causes of action for negligence, breach of trust and breach of contract, and alleges Dahowski's vicarious liability for Grandeau's tortious conduct. The novel question presented is whether the Fund, as subrogee of the victims of Grandeau's misconduct, should be permitted to pursue these rights against Dahowski.

Initially, we observe that the Fund concedes it is authorized to reimburse law clients only for losses attributable to the "dishonest conduct" of attorneys (State Finance Law § 97-t [4]). It is further acknowledged that Dahowski's professional misconduct was in the nature of negligence and not "dishonest conduct" within the meaning of the statute (State Finance Law § 97-t [4]). The issue thus distills to whether Supreme Court properly construed State Finance Law § 97-t (6) as limiting the Fund's authority to pursue subrogation claims solely against the dishonest attorney. That provision reads as follows: "The board of trustees shall have the sole discretion to determine the merits of claims presented for reimbursement, the amount of such reimbursement and the terms under which such reimbursement shall be made. Such terms of reimbursement shall require that the claimant execute such instruments, take such action or enter into such agreements as the board of trustees shall require, including assignments, subrogation agreements and promises to cooperate with the board of trustees in making *claims against the attorney whose dishonest conduct resulted in the claim"* (emphasis supplied). Supreme Court determined that the Fund's

subrogation rights are expressly limited by the underscored phrase to claims against the dishonest attorney. The Fund suggests that this qualifying phrase simply refers to the immediate antecedent, viz., "promises to cooperate with the board of trustees", and that the references to assignments and subrogation agreements are not so restricted. In construing State Finance Law § 97-t (6), we look to both the language utilized and the statutory purpose in assessing its intended effect *(Ferres v City of New Rochelle,* 68 NY2d 446, 451; *People v Prewett,* 126 AD2d 86, 89). Upon our reading of the provision, we find that the qualifying phrase refers to all the listed terms of reimbursement, including subrogation agreements, and not just the "last antecedent" *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 254).

This conclusion, however, does not end our inquiry, for the first sentence of State Finance Law § 97-t (6) confers upon the Fund "the sole discretion to determine * * * the terms under which such reimbursement shall be made". That the second sentence mandates each claimant enter into an agreement to assist the board of trustees in pursuing claims against the dishonest attorney does not, ipso facto, diminish the broad authority conferred in the first sentence. There is no express prohibition against the Fund securing more extensive subrogation rights. The Fund is a creature of statute and enjoys "those powers expressly conferred by its authorizing statute, as well as those required by necessary implication" *(Matter of City of New York v State of New York Commn. on Cable Tel.,* 47 NY2d 89, 92). Since the Fund has been granted broad authority to regulate in the public interest, reasonable acts undertaken in furtherance of the regulatory scheme should be sustained *(see, supra; see also, Matter of Memorial Hosp. v Axelrod,* 68 NY2d 958).

The purpose of the Fund is to maintain the integrity of the legal profession and promote public confidence by reimbursing individuals victimized by the dishonest conduct of attorneys (State Finance Law § 97-t [4]; 22 NYCRR 7200.1; *see,* Governor's mem, 1981 McKinney's Session Laws of NY, ch 714, at 2616). To this end, the first sentence of State Finance Law § 97-t (6) is more properly construed as authorizing the Fund to pursue all reasonable terms of reimbursement *(see,* 22 NYCRR 7200.4 [h], [k]). A contrary finding would jeopardize the financial integrity of the Fund for, as evidenced by the circumstances presented here, where Grandeau is in default and bankrupt, the attorney whose dishonest conduct has

precipitated the claim might be incapable of providing any reimbursement, or even deceased. Under Dahowski's construction, the Fund would not be permitted to prosecute a subrogation claim against the estate of a dishonest attorney, nor a transferee through which a dishonest attorney has attempted to conceal or dispose of his assets. Such an objectionable construction is to be avoided (McKinney's Cons Laws of NY, Book 1, Statutes § 141). "[W]here, as here, an agency's interpretation of a statute is not irrational, unreasonable or inconsistent with the statutory purpose, it is entitled to deference by reviewing courts" *(Matter of Memorial Hosp. v Axelrod,* 68 NY2d 958, 960, *supra).* Accordingly, we hold that the Fund is authorized to pursue its subrogation claim against Dahowski.

MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur; MAIN, J. P., not taking part.

Order and judgment modified, on the law, without costs, by reversing so much thereof as granted defendant Michael T. Dahowski's motion for summary judgment dismissing the complaint against him; said motion denied; and, as so modified, affirmed.