OPINION OF THE COURT
Alexander, J.
The Clients’ Security Fund of the State of New York reimbursed several hundred law clients of attorney Barry J. Grandeau for losses suffered as a result of his having misappropriated their funds. As a condition of reimbursement, the clients agreed to assign and subrogate to the Clients’ Security Fund their rights against Grandeau, his partner Michael T. Dahowski, and their law partnership. By statute, the Fund is authorized to recover disbursements made to clients of the attorney who engaged in the dishonest conduct. The question presented by this appeal is whether the Fund is restricted to recoupment *65 solely from the attorney who personally engaged in the dishonest conduct, or whether it may also pursue a subrogation action against the attorney’s former law partner.
I.
The Clients’ Security Fund was created in 1981, with its assets in the custody of the State Comptroller (State Finance Law § 97-t; L 1981, ch 714). In providing for such a fund, the Legislature sought "to promote public confidence in the administration of justice and the integrity of the legal profession by reimbursing losses caused by the dishonest conduct of attorneys admitted and licensed to practice law in the courts of New York State” (22 NYCRR 7200.1; see generally, Palermo, Clients’ Security Funds Help Our Professional Image, 56 NYSBJ 10 [1984]). The Fund is administered by a seven-member Board of Trustees (the Board), appointed by the Court of Appeals. The Board is authorized to adopt regulations for the administration of the Fund and procedures for the "presentation, consideration, allowance and payment of claims” (State Finance Law § 97-t [5]). The Fund is financed primarily from a biennial registration fee imposed, with certain exceptions, upon all attorneys in New York (Judiciary Law § 468-a; State Finance Law § 97-t [2]).
In order to implement the purpose of the Fund, the Board is empowered to reimburse clients, in its discretion, for "losses caused by the dishonest conduct of attorneys admitted to practice in this state” (State Finance Law § 97-t [4]). The statute defines dishonest conduct to mean the "misappropriation or wilful misapplication of clients’ money, securities, or other property, by an attorney admitted to practice in this state” (State Finance Law § 97-t [4]). The Legislature has entrusted the Board with "sole discretion to determine the merits of claims presented for reimbursement, the amount of such reimbursement and the terms under which such reimbursement shall be made” (State Finance Law § 97-t [6]). Terms of reimbursement — including an aggrieved client’s agreement to assign or subrogate rights — are to be fixed by the Board (State Finance Law § 97-t [6]).
Among those disbursements made since its inception, the Fund has awarded approximately $589,829 to 373 claimants— all clients of the law partnership of Grandeau & Dahowski. The firm was formed by defendants Barry J. Grandeau and Michael T. Dahowski, and conducted a law practice in Pough *66 keepsie. By 1982, both Grandeau and Dahowski were the subject of separate disciplinary proceedings for having misappropriated the funds of the firm’s clients. Upon submission of his resignation, Grandeau was disbarred for misappropriation of funds, for failing to render an accounting of funds, and for failing to keep records (Matter of Grandeau, 88 AD2d 628). Dahowski, on the other hand, was not disbarred but was censured for professional misconduct — including his failure "to oversee or review the record keeping of his law firm, thereby contributing to the conversion by [his] law partner of funds entrusted to the law firm” (Matter of Dahowski, 103 AD2d 354, 355). The Appellate Division specifically observed, however, that other than the misconduct stated, Dahowski was "in no way responsible for the conversions” (Matter of Dahowski, 103 AD2d 354, 355, supra).
As a condition of making reimbursements to the clients of the law firm, the Board required each client to execute an agreement subrogating and assigning to the Fund his or her rights against Grandeau, Dahowski and the partnership. The Fund, in turn, commenced this action, seeking to recoup sums paid to the clients. Causes of action grounded in negligence, breach of trust, and breach of contract, and Dahowski’s vicarious liability for Grandeau’s professional misconduct are stated. Defendant Dahowski answered, but defendant Grandeau defaulted and is not a party to this appeal. Dahowski and the Fund cross-moved for summary judgment, Dahowski claiming that the action did not lie against him individually.
Supreme Court denied the Fund’s motion and awarded summary judgment to Dahowski, dismissing the complaint as to him (131 Misc 2d 673). That court held that insofar as Dahowski never personally engaged in "dishonest conduct” as defined by the statute — but merely negligently failed to discover Grandeau’s peculations — the Fund could not have reimbursed losses to the firm’s clients that were attributable to his conduct. Therefore, the court concluded, there is no basis for a statutory subrogation action, or a common-law subrogation action against Dahowski. The Appellate Division modified by denying Dahowski summary judgment, concluding that the Clients’ Security Fund, consistent with its purposes, is authorized to pursue its subrogation claim against him (129 AD2d 383). The Appellate Division thereafter certified to this court a question as to whether it had erred in so modifying. We now affirm and answer the question certified in the negative.
*67 II.
State Finance Law § 97-t (6) provides that the terms upon which reimbursement may be made by the Board: "shall require that the claimant execute such instruments, take such action or enter into such agreements as the board of trustees shall require, including assignments, subrogation agreements and promises to cooperate with the board of trustees in making claims against the attorney whose dishonest conduct resulted in the claim” (emphasis added). Defendant argues that the last phrase restricts the Fund from pursuing "subrogation actions grounded in mere negligence”. Defendant’s contention, however, misperceives the thrust of the Fund’s subrogation claim. The Fund acknowledges its authority to reimburse law clients only for losses attributable to the "dishonest conduct” of attorneys, and concedes that here Dahowski did not engage in "dishonest conduct” as that term is defined by the statute. The Fund does not seek to recoup reimbursements predicated upon claims that Dahowski engaged in negligent professional misconduct. Rather, the Fund seeks to recoup — to the extent of the reimbursements paid— those sums which each client had a right to pursue from whatever party as may be liable for the dishonest conduct of Grandeau.
Traditional principles of partnership law dictate that, ordinarily, one member of a partnership is liable for the tortious conduct of another, and any member of a partnership may be liable for a conversion of property committed by a member of the firm, even where the other members of the firm had no knowledge of the offending partner’s action (see generally, 16 NY Jur 2d, Business Relationships, §§ 1407-1408; Annotation, Vicarious Liability of Attorney for Tort of Partner in Law Firm, 70 ALR3d 1298). In the circumstances of this case, each client victimized by Grandeau’s misappropriation of funds acquired a viable cause of action against Dahowski as well. The aggrieved client assigned and subrogated to the Fund its right to assert such a cause of action and establish Dahowski’s liability for Grandeau’s tortious conduct. The Fund may therefore prosecute, standing in the shoes of the aggrieved clients, claims of negligence, breach of contract and breach of trust against Dahowski (see, United States Fid. & Guar. Co. v Smith Co., 46 NY2d 498, 504; see generally, 57 NY Jur, Subrogation, §§ 15, 26).
Nevertheless, defendant argues, subrogation against anyone *68 other than the attorney whose dishonest conduct resulted in the claim was simply not contemplated by the Legislature. Defendant’s contention, however, is inconsistent with the statutory provisions vesting broad discretion in the Board and frustrates the purposes of the legislation creating the Fund.
State Finance Law § 97-t (6) vests sole discretion in the Fund to define the terms under which reimbursement shall be made. The statute further confers upon the Board authority to require that a claimant "execute such instruments, take such action or enter into such agreements as the board * * * shall require”. This grant of authority embraces a broad power to devise terms and structure reimbursement agreements as the Board, in the exercise of its sound discretion, shall deem suitable to advance the aims of the Fund. The various circumstances enumerated in the statute are examples of terms upon which reimbursement may be conditioned; we do not interpret them as circumscribing the Board’s discretion. If, as defendant urges, the Legislature sought to restrict the Board to recoupment solely from the attorney who personally engaged in the dishonest conduct, the primary grant of broad authority would have little meaning beyond the enumerated terms. These provisions taken together evince a legislative intent not to restrict the source of recoupment solely to the attorney personally culpable for the dishonest conduct — an individual who often may be bankrupt, incarcerated or deceased and incapable of providing any refunding. To so limit the power of the Fund would jeopardize its financial integrity and undermine its ability to promote public confidence in the legal profession.
We conclude therefore, that the Board is authorized to prosecute the instant subrogation claim not only against the attorney who engaged in the dishonest conduct — -Grandeau— but against Dahowski, his former law partner, as well.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the question certified answered in the negative.
Chief Judge Wachtler and Judges Simons, Hancock, Jr., and Bellacosa concur; Judges Kaye and Titone taking no part.
Order affirmed, etc.