■ RUTHMAN, MERCADANTE & HADJIS, P. C., Appellant, v KATHRYN O'K. NARDIELLO, Individually and as Executor of DONALD A. NARDIELLO, Deceased, Respondent. [688 NYS2d 823] —Cardona, P. J. Appeal from an order of the Supreme Court (Viscardi, J.), entered September 23, 1998 in Essex County, which, *inter alia*, denied plaintiff's motion for partial summary judgment.

This action was commenced by plaintiff to recover legal fees allegedly owed by defendant and her husband (hereinafter collectively referred to as defendants)[1] for legal services rendered pursuant to a retainer agreement executed on June 2, 1993. The litigation giving rise to the instant controversy originated from the October 1988 sale of the assets of WIRD, Inc., a corporation owned by defendants which operated radio stations in the Village of Lake Placid, Essex County, to Adirondack Network Systems, Inc. (hereinafter ANS). In connection with the transaction, ANS executed, *inter alia*, certain promissory notes as well as a security agreement and its shareholders executed a pledge agreement in which they pledged their stock in ANS as security for ANS' obligations under the promissory notes. In November 1991, ANS defaulted resulting in defendants commencing an action to foreclose their security interest in ANS' assets. On October 8, 1992, Supreme Court granted

---

1. Defendant's husband died after the commencement of this action and defendant has been substituted as the executor of his estate.

summary judgment to defendants in the foreclosure action. ANS, however, filed a petition in bankruptcy one day earlier, effectively nullifying the effect of the judgment.

Defendants retained the law firm of Cooper, Erving, Savage, Nolan & Heller (hereinafter Cooper) to represent their interests in the bankruptcy proceeding and the law firm of Tierney & Swift to handle certain licensing matters involving the Federal Communications Commission (hereinafter the FCC). Following consultation with Thomas Hadjis, an attorney associated with plaintiff, defendants retained plaintiff to, *inter alia*, commence a special proceeding for the purpose of obtaining the turnover of ANS stock by enforcing the stock pledge agreement. The retainer agreement, signed June 2, 1993, provided, *inter alia*, that plaintiff was entitled to a contingency fee equal to one third of the assets recovered. Plaintiff commenced the proceeding on June 7, 1993 and, on August 16, 1993, Supreme Court issued an order directing ANS' shareholders to deliver their stock certificates to defendants which was done on August 27, 1993.

Prior to the transfer, however, ANS' shareholders obtained a conversion of the bankruptcy proceeding from a chapter 11 reorganization to a chapter 7 liquidation which rendered the stock certificates valueless. In response, defendants, acting through Cooper, made a motion in the bankruptcy proceeding to reconvert the case to chapter 11. The motion was granted and defendants were, *inter alia*, appointed to manage the assets of ANS and to file a reorganization plan. In March 1994, defendants' reorganization plan was confirmed and, in June 1994, the FCC approved the transfer and assignment to defendants of the radio broadcast licenses. On or about June 20, 1994, all of the outstanding shares of stock of ANS were canceled and new stock certificates were issued to defendants.

On July 9, 1994, Hadjis sent defendants a statement for legal services rendered pursuant to the retainer agreement in the amount of $113,476.62, inclusive of disbursements.[2] Defendants did not object to the statement and, in addition to a $2,500 payment made at the time of signing the retainer agreement, made various payments from October 7, 1994 to March 3, 1997 totaling $29,250. When defendants failed to make further payments, plaintiff commenced this action. The complaint alleged, *inter alia*, a first cause of action to recover the contingency fee set forth in the retainer agreement, a

---

2. In September 1994, Hadjis ceased representation of defendants and forwarded their litigation files to Joseph Maria, Esq. for the purpose of commencing a damage action against individual ANS shareholders.

second cause of action to recover the balance due on the July 9, 1994 statement of account and a fourth cause of action to recover the balance due on a March 1, 1997 statement of account. Following joinder of issue, plaintiff moved for partial summary judgment on these causes of action and defendants cross-moved for summary judgment dismissing the first and second causes of action. Supreme Court, *inter alia*, denied plaintiff's motion resulting in this appeal.

We disagree with plaintiff's contention that Supreme Court erred in denying summary judgment on its first cause of action. It is undisputed that, after an unsuccessful attempt to recover the assets of ANS via the foreclosure action, defendants retained plaintiff for the purpose of obtaining control of ANS through the enforcement of the pledge agreement. The retainer agreement provided, in pertinent part, that defendants retained plaintiff: "to render legal services in relation to a certain Pledge Agreement, to prosecute and adjust and/or to take any and all proceedings which [plaintiff] may deem advisable in relation thereto, against any person or firm as required to recover the capital stock certificates representing ownership in [ANS]; *or cause the recovery* of all assets of ANS in any legal manner, and/or recover damages sustained by [defendants] because of the breach of the individuals named above of a certain Asset Purchase Agreement * * * and Pledge Agreement" (emphasis supplied). The agreement further provided that defendants "in consideration of such services, do hereby agree to pay the said attorneys, and they are duly authorized to retain out of *any assets recovered*, an amount equivalent to one-third (⅓) thereof, in addition to all taxable costs and disbursements" (emphasis supplied).

It is well settled that a contract which is unambiguous must be enforced according to its terms (*see, Uribe v Merchants Bank*, 91 NY2d 336, 341; *W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162). Whether an ambiguity exists is a question of law to be determined by the court (*see, W.W.W. Assocs. v Giancontieri*, *supra*, at 162; *First Dev. Corp. v Delco Plainview Realty Assocs.*, 194 AD2d 711, 712). If the court concludes that a contract is ambiguous, extrinsic evidence may be considered to discern the meaning of the contract (*see, First Dev. Corp. v Delco Plainview Realty Assocs.*, *supra*, at 712; *Paroff v Muss*, 171 AD2d 782, 782-783). In such case, resolution of the ambiguity is for the trier of fact (*see, Cappelletti v Unigard Ins. Co.*, 222 AD2d 1029, 1031; *Arrow Communication Labs. v Pico Prods.*, 219 AD2d 859, 860).

Although plaintiff should be compensated for professional

services rendered, we agree with defendants that the terms of the retainer agreement are unclear and ambiguous with respect to the scope of services to be provided by plaintiff as well as the method and manner of compensation as related to the various services. The agreement broadly authorized plaintiff to pursue legal action to recover the stock of ANS, or the assets of ANS, and/or damages against the individual shareholders. It provided further that plaintiff was entitled to one third of "any assets recovered", but failed to indicate, other than stock, the nature of the assets contemplated. Furthermore, even though plaintiff's professional services have been concluded, it is not clear from the record the nature or value of the assets actually recovered. In this regard, we note that the amended disclosure statement relied upon by plaintiff includes a "Projected Post-Confirmation Balance Sheet" that was filed six months prior to the conclusion of the bankruptcy proceeding and cannot be presumed to accurately reflect the value of the assets listed thereon. Moreover, it is not clear which of those assets, if any, were actually recovered by plaintiff.

The language of the retainer agreement which conditioned plaintiff's compensation on "caus[ing] the recovery" of assets is also ambiguous. Defendants contend that the assets ultimately recovered were not attributable to services performed by plaintiff but were the result of work done by Cooper in the bankruptcy proceeding and Tierney & Swift before the FCC. ANS' default on its loan obligations and subsequent filing of a petition in bankruptcy produced a myriad of legal problems for defendants requiring expertise in several different areas. Defendants hired legal specialists to handle these problems all of whom worked in cooperation with one another toward the goal of restoring defendants to the position they were in prior to the default. Certainly, without the services of Cooper in the bankruptcy proceeding and the representation of Tierney & Swift before the FCC, the assets ultimately recovered by plaintiff via enforcement of the pledge agreement would not have had the same value. It is not clear from the retainer agreement whether that makes a difference in computing plaintiff's fee. Inasmuch as there are obvious ambiguities in the language of the retainer agreement which raise questions of fact, Supreme Court properly denied summary judgment on plaintiff's first cause of action.

Likewise, to the extent the record also raises numerous questions of fact with respect to plaintiff's second and fourth causes of action alleging accounts stated, Supreme Court properly denied summary judgment on these causes of action. We have

considered plaintiff's remaining contentions and find them to be without merit.

Peters, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the order is affirmed, with costs.