*230 OPINION OF THE COURT
Thomas J. Spargo, J.
This action seeks recovery for personal injuries and damages suffered by plaintiffs Michael and Susan Miszko (Miszkos) due to defendants’ negligent operation of an automobile. The defendants, through their insurance company (Prudential), have offered to pay the entire amount of available liability insurance, $25,000, to the Miszkos in settlement of the action. The Miszkos have refused to endorse the settlement draft tendered by Prudential because the New York State Insurance Fund (State Fund) claims that the entire settlement proceeds, less attorney’s fees and disbursements, are owed to the State Fund as satisfaction for its statutory lien for workers’ compensation benefits paid to plaintiff Michael Miszko.
Finkelstein & Partners L.L.P. (Finkelstein), the attorneys for the plaintiffs in the underlying personal injury case, therefore moves for an order directing payment of their fees and disbursements in the amount of $10,027.38 and for payment of the balance of the insurance policy proceeds of $14,972.62 to the Lawyers’ Fund for Client Protection “for the account” of the Miszkos. The purported basis of the motion is that the Miszkos’ refusal to execute the settlement documents renders this situation analogous to a “missing party” proceeding pursuant to 22 NYCRR former 1200.46 (f).
The Miszkos, representing their own interests on this motion, cross-move for apportionment of the settlement proceeds between them, Finkelstein and the State Fund, pursuant to Workers’ Compensation Law § 29 (5).
The State Fund cross-moves for an order directing Prudential to pay Finkelstein its fee and disbursements and to pay the disputed $14,972.62 balance to the State Fund in satisfaction of its lien.
Michael Miszko was injured on March 13, 1989 while pursuing a suspected drunk driver during the course of Miszko’s employment as a New York State Trooper. He immediately applied for, and began receiving, workers’ compensation benefits through the State Fund.
Mr. Miszko thereafter signed a blank retainer agreement with Finkelstein pursuant to which Finkelstein would pursue a personal injury claim for Miszko in exchange for a fee of 331/3% of any recovery after deduction of Finkelstein’s disbursements and expenses. Susan Miszko did not sign the retainer agreement.
*231 In 1990, Finkelstein commenced a lawsuit on behalf of both Miszkos, asserting a cause of action for Susan Miszko’s loss of her husband’s services, society and consortium, in addition to Michael Miszko’s cause of action for his own injuries and damages. After what Finkelstein describes as “protracted” litigation, a proposed settlement agreement was reached in early 2000 by which Prudential would pay the insurance policy proceeds of $25,000 to the Miszkos in exchange for a release from liability. Both Miszkos signed the release on February 16, 2000.
By this time the State Fund had paid more than $169,372.25 in workers’ compensation benefits to Michael Miszko and, after required statutory deductions, had a lien pursuant to Workers’ Compensation Law § 29 (1) in the amount of $71,492.61.
Since April of 2000 the Miszkos have refused to endorse the tendered settlement draft due to their dispute with the State Fund over whether the State Fund had agreed to waive some or all of its lien and whether the State Fund had agreed to waive its right under Workers’ Compensation Law § 29 (4) to an offset or credit against the Miszkos’ settlement proceeds.
Even absent any compromise or waiver, the Miszkos claim that the State Fund is not entitled to all of the settlement proceeds of $14,972.62 since some portion of the total recovery is attributable to Susan Miszko’s claim for loss of consortium which is separate and distinct from Michael Miszko’s claim for his own injuries and damages.
The State Fund asserts that it is entitled to all of the settlement proceeds since its lien attaches to “any recovery” received by a claimant and that there was never any intent that any part of the recovery was for Susan Miszko’s loss of consortium claim.
Initially, the court rejects Finkelstein’s characterization of the Miszkos as analogous to “missing clients.” The Miszkos are, and have been, fully available to Finkelstein. The fact that Finkelstein and the Miszkos disagree as to whether the Misz-kos should sign the settlement draft does not render them missing.
The Miszkos, by cross motion, make an application pursuant to Workers’ Compensation Law § 29 (5) to obtain an order approving the settlement and apportioning the settlement proceeds. Workers’ Compensation Law § 29 (5) dispenses with the need for the State Fund’s consent to a settlement if the claimant obtains approval of the settlement from a justice of the court in which the action is pending.
*232 A Workers’ Compensation Law § 29 (5) application must be brought within three months from the time an offer is made which is acceptable to the plaintiff, where the proposed settlement arises during trial. Since there is no indication in the record that the underlying action was being tried in April 2000, this application is timely (Matter of Bernthon v Utica Mut. Ins. Co., 279 AD2d 728, 729). Even so, a late application may be entertained where “the petitioner can establish that (1) the amount of the settlement is reasonable, (2) the delay in applying for a judicial order of approval was not caused by the petitioner’s fault or neglect, and (3) the carrier was not prejudiced by the delay” (Matter of Stiffen v CNA Ins. Cos., 282 AD2d 991, 992).
The proposed settlement is reasonable since the offer is for the entire available insurance proceeds. Any delay in bringing this application was not attributable to the Miszkos themselves and there is no prejudice to the State Fund since the settlement proceeds have not yet been paid and they have had a full opportunity to participate in the application.
The State Fund argues that its lien attaches to “any recovery” of Michael Miszko. Susan Miszko, however, possesses a cause of action for loss of consortium separate and distinct from her husband (Millington v Southeastern El. Co., 22 NY2d 498; Buckley v National Frgt., 90 NY2d 210, 218; Pinto v Ancona, 262 AD2d 472, 473; Champagne v State Farm Mut. Auto. Ins. Co., 185 AD2d 835, 837).
The State Fund asserts, based upon Scannell v Karlin (252 AD2d 552, 553 [2d Dept 1998], lv denied 93 NY2d 805), that a Workers’ Compensation Law § 29 (1) lien attaches to the loss of consortium cause of action of the spouse of a workers’ compensation claimant. The Scannell Court cites two cases, Matter of Parmelee v International Paper Co. (157 AD2d 878) and Matter of Simmons v St. Lawrence County CDP (147 AD2d 323), for this proposition. A review of the cited decisions demonstrates that neither of those cases involved assertion of a workers’ compensation lien against a loss of consortium cause of action. The Scannell Court offers no other explanation for its statement that a workers’ compensation lien attaches to the loss of consortium claim of a spouse who has received no workers’ compensation benefits. The Scannell dictum cited by the State Fund is not binding on this court (Matter of Raponi v Orange & Rockland Util., 221 AD2d 786).
The State Fund acknowledges that Susan Miszko has not received workers’ compensation benefits. The State Fund can *233 not recover that which it has not paid. A Workers’ Compensation Law § 29 (1) lien does not attach to the third-party recovery of the spouse of a workers’ compensation claimant where the recovery is for the spouse’s separate and distinct cause of action for loss of consortium.
As part of a Workers’ Compensation Law § 29 (5) application, the court, upon adequate proof, may allocate the proceeds of a proposed settlement between a workers’ compensation claimant’s direct injuries and damages and a spouse’s derivative claim for loss of consortium (Raponi v Orange & Rockland Util., 221 AD2d 786, 787; Feller v Sano-Rubin Constr. Co., 62 AD2d 1071, 1072). The court is given “broad discretion in framing an order under Workers’ Compensation Law § 29 (5) consistent with the interests of the parties” (Raponi at 787; Schnabel v Grimes, 31 AD2d 375, 378).
The pleadings in the underlying lawsuit alleged and particularized Susan Miszko’s cause of action for loss of consortium. The testimony by the Miszkos at the hearing of January 24, 2002, subject to cross-examination by the State Fund, further demonstrated her damages. Although the State Fund claims that Susan Miszko’s assertion of her loss of consortium claim is an “afterthought” designed to circumvent the lien, the record shows that the Miszkos vigorously argued the separate and independent nature of her claim in letters to their attorney on October 6, 1999 and July 24, 2000.
Based upon this proof, it is found that the loss of consortium claim of Susan Miszko constitutes 30% of the total damages in the underlying personal injury action. The remaining 70% of the recovery is attributable to Michael Miszko’s injuries and damages.
Finkelstein’s attorney’s fees and disbursements in the amount of $10,027.38 are ordered to be paid directly by Prudential. Of the remaining balance of $14,972.62, Prudential will pay 30%, or $4,491.79, directly to Susan Miszko. The remaining proceeds of $10,480.83 are to be paid directly to the State Fund in satisfaction of its Workers’ Compensation Law § 29 (1) lien. Upon completion of these payments, Finkelstein will prepare and file a stipulation of discontinuance of the underlying action. All other relief is denied.
The proposed settlement is approved upon these ordered terms. Since Michael Miszko will receive none of the settlement funds, there would appear to be no basis for an offset or credit against his future workers’ compensation benefits pursuant to Workers’ Compensation Law § 29 (4). That issue, *234 however, is reserved for the Workers’ Compensation Board to decide (Matter of Martin v Levest Elec. Corp., 289 AD2d 773).