■ MICHAEL MISZKO et al., Appellants-Respondents, v CAROLE L. GRESS et al., Defendants. NEW YORK STATE INSURANCE FUND, Respondent-Appellant. FINKELSTEIN & PARTNERS, L.L.P., Respondent. [772 NYS2d 723]—

Kane, J. Cross appeals from an order of the Supreme Court (Spargo, J.), entered April 12, 2002 in Ulster County, which, inter alia, partially granted a motion by Finkelstein & Partners L.L.P. for disbursement of settlement proceeds in an underlying action and partially denied a cross motion by New York State Insurance Fund to direct payment of its workers' compensation lien.

Plaintiff Michael Miszko (hereinafter Miszko) was injured in the course of his employment as a state trooper while trying to apprehend defendant Kenneth J. Fox in 1989. After incurring these injuries, Miszko began receiving workers' compensation benefits from the New York State Insurance Fund (hereinafter Fund). In order to commence an action against defendants, Miszko signed a retainer agreement form with the law firm now known as Finkelstein & Partners L.L.P. (hereinafter Finkelstein), but the blanks on the form were never completed. The form provided for a one-third contingency fee. Plaintiff Susan E. Miszko did not sign the form.

Plaintiffs commenced this action through Finkelstein to recover for Miszko's personal injuries and his wife's loss of services and consortium. Defendants offered their full $25,000 insurance policy limit to settle the case. To protect his entitlement to workers' compensation benefits, Miszko was required to obtain the Fund's consent to the settlement, as the Fund had a statutory lien on any recovery (see Workers' Compensation Law § 29). In March 1999, the Fund consented to the $25,000 settlement, with the Fund to receive $14,866.67* in full satisfaction of its lien, and indicated that Miszko and the Fund would endeavor to resolve the compensation case. Settlement did not occur then, but the parties apparently reached a similar settlement in January 2000. In February 2000, plaintiffs signed a release of their claims against defendants. In April 2000, the

---

* This figure, representing the net balance of the settlement after subtracting litigation expenses, contains a slight miscalculation due to inaccurate disbursement and counsel fee figures. The correct amount was $14,972.62.

Fund sent a consent letter which differed from the earlier letter by providing the following option: the Fund could receive the same amount mentioned earlier and Miszko would continue to receive compensation benefits, or the Fund would waive its lien if Miszko reached a Workers' Compensation Law § 32 settlement by September 2000. Plaintiffs disliked the April 2000 consent and refused to endorse the settlement check.

In 2002, Finkelstein moved to have plaintiffs declared missing clients, and for an order directing Prudential Insurance Company, defendants' insurance carrier, to pay counsel fees and disbursements directly to Finkelstein and deposit the remainder of the settlement with the Lawyers' Fund for Client Protection until plaintiffs and the Fund could reach an agreement (*see* 22 NYCRR 1200.46 [f]). The Fund cross-moved to receive the remainder of the settlement moneys, rather than turning it over to the Lawyers' Fund for Client Protection. Plaintiffs crossmoved for an order to, among other things, reduce counsel fees to 25% of the net recovery, hold that the settlement was not subject to any lien, and hold that a portion of the settlement was attributable to Susan Miszko's derivative claim and not subject to any lien. Supreme Court held that plaintiffs were not missing clients, 30% of the settlement was attributable to the derivative claim, and that portion was not subject to the lien but Miszko's portion was. Accordingly, the court ordered Prudential to pay $10,027.38 to Finkelstein, $4,491.79 to Susan Miszko, and $10,480.83 to the Fund in satisfaction of its lien (191 Misc 2d 229, 233 [2002]). Plaintiffs appeal and the Fund cross-appeals.

The Fund had a valid lien on Miszko's recovery. An individual receiving workers' compensation benefits is entitled to commence a civil action against a tortfeasor "not in the same employ" who caused the injuries giving rise to such benefits (Workers' Compensation Law § 29 [1]). However, an automatic lien attaches to the proceeds of any recovery, in favor of the Fund, for any amounts that the Fund has paid in compensation benefits, less litigation costs and amounts received in lieu of first party benefits under the no-fault law (*see* Workers' Compensation Law § 29 [1], [1-a]; *Dietrick v Kemper Ins. Co. [American Motorists Ins. Co.]*, 76 NY2d 248, 251 [1990]; *Matter of McHenry v State Ins. Fund*, 236 AD2d 89, 90-91 [1997]; *Matter of Simmons v St. Lawrence County CDP*, 147 AD2d 323, 324-326 [1989]). At the time of settlement here, the Fund had paid Miszko over $169,000 in compensation benefits. After reductions for litigation expenses and amounts equivalent to no-fault first party benefits, the Fund had a lien of $71,492.61.

This far exceeded any recovery under the settlement, thus extending the Fund's section 29 (1) lien to the entire amount that Miszko recovered. This lien is in no way limited or abrogated by General Municipal Law § 205-e, the statutory basis for the underlying action, which specifically enunciates that "nothing in this section shall be deemed to expand or restrict any right afforded to or limitation imposed upon . . . an employee . . . by virtue of any provisions of the workers' compensation law" (General Municipal Law § 205-e [1]).

Plaintiffs' further argument that the Fund waived its lien in the March 1999 consent letter represents a misunderstanding of the facts and law. In that letter, in addition to agreeing to satisfaction of its Workers' Compensation Law § 29 (1) lien upon receipt of $14,866.67 from the settlement proceeds, the Fund waived its right to a credit or offset under Workers' Compensation Law § 29 (4). That subdivision provides a means by which the Fund can offset future payments of compensation against proceeds of a third-party action (*see Matter of Figelman v Goldfarb*, 257 AD2d 721, 722 [1999], *lv denied* 94 NY2d 753 [1999]). As this credit only applies if the recovery is greater than the existing lien, a situation not present here, subdivision (4) is inapplicable. The Fund's waiver of that illusory right did not constitute a waiver of any other rights or liens which it possessed. Additionally, the Fund's second letter did not renege on its prior agreement. It contained the same terms, except that it also provided an option if Miszko reached a speedy Workers' Compensation Law § 32 settlement of his compensation case. That condition not having been met, the result is the same as it would have been under the earlier consent letter. Therefore, the Fund was entitled to receive Miszko's entire net recovery in satisfaction of its section 29 (1) lien.

Supreme Court improperly attributed 30% of the settlement to Susan Miszko's derivative claim. Miszko was required to obtain the Fund's consent prior to settling or obtain a court determination of this lien, or risk forfeiting all future workers' compensation benefits (*see* Workers' Compensation Law § 29 [5]). In each consent letter, the Fund agreed to a settlement of $25,000, with the Fund receiving $14,866.67 in satisfaction of its lien. That figure equaled the full settlement amount minus counsel fees and disbursements. Plaintiffs were clearly dissatisfied with the Fund's terms to settle the lien, as evidenced by their refusal to endorse the settlement check. The court heard their application pursuant to Workers' Compensation Law § 29 (5) and allocated 30% of the net recovery, after disbursements and counsel fees, to the derivative claim. Considering the extent

of Miszko's injuries, his continuing disability, and the limited proof submitted by his wife, 30% is excessive (*see Feller v Sano-Rubin Constr. Co.*, 62 AD2d 1071, 1072 [1978]; *compare Matter of Raponi v Orange & Rockland Utils.*, 221 AD2d 786, 787 [1995]). Upon review of the record, the sum of $2,500, equal to 10% of the total gross recovery, is an appropriate amount attributable to her derivative claim.

Supreme Court properly awarded Finkelstein its disbursements and counsel fees equal to one third of the net recovery for Miszko's claim. We reject plaintiffs' argument that the disbursements are unverified, since Miszko acknowledged before Supreme Court that he had no problem with the claimed disbursements. Miszko agreed that Finkelstein should be paid something for its services, though he suggested a lower amount of 25%. Miszko also acknowledged that he signed the retainer agreement, which provided for a one-third contingency fee. The parties' intent will be gleaned from the language in the retainer agreement, which is clear and unambiguous (*see Kooperman v Picoult*, 41 AD2d 980, 981 [1973], *affd* 34 NY2d 604 [1974]). Although portions of the retainer agreement were left blank, those portions are not the subject of dispute (*compare Ruthman, Mercadante & Hadjis v Nardiello*, 260 AD2d 904, 906-907 [1999]). Additionally, we reject plaintiffs' argument that Finkelstein should not recover anything because Miszko did not realize any money from the settlement. Aside from his acknowledgment to Supreme Court that the firm was entitled to some fee, the settlement was obtained on Miszko's behalf, despite the balance being paid over to the Fund pursuant to its statutory lien. In that Finkelstein was not instrumental in Susan Miszko's recovery, made no effort to attribute any portion of the recovery to the derivative claim, nor did it have a retainer agreement signed by her, it is not entitled to recover any counsel fee against her recovery. Therefore, Finkelstein was entitled to its disbursements and a counsel fee equal to one third of the net recovery on Miszko's claim.

Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as granted plaintiff Susan E. Miszko 30% on her derivative claim; order Prudential Insurance Company to pay $2,500 to said plaintiff on her derivative claim, $9,194.05 to Finkelstein & Partners L.L.P. for counsel fees and disbursements, and $13,305.95 to the New York State Insurance Fund in satisfaction of its lien; and, as so modified, affirmed. [*See* 191 Misc 2d 229.]