*338 OPINION OF THE COURT
Jack M. Battaglia, J.
The Law Offices of Michael S. Lamonsoff, PLLC, as attorney of record for plaintiff Antonio Vega, moves for an order, pursuant to rule 1.15 (f) of the Rules of Professional Conduct (22 NYCRR 1200.0), “for the release of a sum of money payable to a client . . . the attorney is unable to locate” (see notice of motion dated Sept. 27, 2012). With a decision and order dated December 13, 2011, this court denied counsel’s prior motion for the same relief, “with leave to renew in accordance with [that] opinion.”
Plaintiff Antonio Vega commenced this action to recover damages for personal injuries allegedly sustained on February 3, 2006. Mr. Vega’s claim was settled with payment of $375,000 by defendant Academy Express, LLC, and the funds were deposited in counsel’s “attorney’s trust account” (see affirmation in support of motion 11 2). Counsel withdrew $126,868.35 for its fee and disbursements; further disbursed a total of $6,095.29 in payment of “pre-settlement loans given to Antonio Vega” (see id. If 3); and gave $210,856.64 to Mr. Vega.
The balance remaining, i.e., $31,179.72, was left in counsel’s escrow account “in order to deal with an asserted lien by Dr. Jeffrey Spivak” in the amount of $20,955 (see id. 1Í1Í 3, 4). Counsel negotiated with Dr. Spivak, and “reached a tentative agreement to settle the alleged lien” for $7,500 (see id. If 4).
Among other reasons, this court denied counsel’s prior motion because a sufficient showing had not been made that Mr. Vega could not be located, and because counsel provided no authority for the lien apparently claimed by Dr. Spivak and no evidence that would support an order for any payment to Dr. Spivak. On this renewal, counsel demonstrates due diligence in attempting to locate Mr. Vega, for which no additional compensation or reimbursement is requested.
Unlike the prior motion, on this renewal counsel does not seek authority to pay any amount to Dr. Spivak. No explanation is provided, but the court notes that, unlike the statutory lien for medical expenses that is provided to hospitals (see Lien Law § 189) and to social services agencies (see Social Services Law § 369), “[i]n the absence of agreement, a physician . . . does not have a lien on the proceeds of a settlement or recovery in a tort action” (see Aiello v Levine, 44 Misc 2d 1067, 1068 [Nassau Dist Ct 1965]; see also Matter of Kelly, 23 NY2d 368, 382 [1968]).
*339 Counsel seeks an order authorizing payment of the full remaining balance of the settlement proceeds to the Lawyers’ Fund for Client Protection, relying upon rule 1.15 (f) of the Rules of Professional Conduct, which reads as follows:
“Whenever any sum of money is payable to a client and the lawyer is unable to locate the client, the lawyer shall apply to the court in which the action was brought if in the unified court system, or, if no action was commenced in the unified court system, to the Supreme Court in the county in which the lawyer maintains an office for the practice of law, for an order directing payment to the lawyer of any fees and disbursements that are owed by the client and the balance, if any, to the Lawyers’ Fund for Client Protection for safeguarding and disbursement to persons who are entitled thereto.” (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.15 [f].)
Prior to April 1, 2009, the effective date of the Rules of Professional Conduct, the former Code of Professional Responsibility contained the same provision (see DR 9-102 [f] [22 NYCRR 1200.46 (f)]). Similar provisions can be found in the Rules of the Appellate Division, First Department (see 22 NYCRR 603.7 [d] [2]) and Second Department (see 22 NYCRR 691.20 [d] [2]). Earlier versions of the First and Second Department rules provided that funds belonging to a “missing client” should be deposited with the clerk of the court “for the account of the client.” (See Peguero v Grant, 90 Misc 2d 580, 582-583 [Civ Ct, NY County 1977].)
The basic purpose, structure, and powers of the Lawyers’ Fund for Client Protection, originally called the “Clients’ Security Fund,” was described by the Court of Appeals in Clients’ Sec. Fund of State of N.Y. v Grandeau (72 NY2d 62 [1988]):
“The Clients’ Security Fund was created in 1981, with its assets in the custody of the State Comptroller (State Finance Law § 97-t; L 1981, ch 714). In providing for such a fund, the Legislature sought ‘to promote public confidence in the administration of justice and the integrity of the legal profession by reimbursing losses caused by the dishonest conduct of attorneys admitted and licensed to practice law in the courts of New York State’ (22 NYCRR 7200.1; . . .). The Fund is administered by a seven-member Board of Trustees (the Board), appointed by the *340 Court of Appeals. The Board is authorized to adopt regulations for the administration of the Fund and procedures for the ‘presentation, consideration, allowance and payment of claims’ (State Finance Law § 97-t [5]). The Fund is financed primarily from a biennial registration fee imposed, with certain exceptions, upon all attorneys in New York (Judiciary Law § 468-a; State Finance Law § 97-t [2]).
“In order to implement the purpose of the Fund, the Board is empowered to reimburse clients, in its discretion, for Tosses caused by the dishonest conduct of attorneys admitted to practice in this state’ (State Finance Law § 97-t [4]). The statute defines dishonest conduct to mean the ‘misappropriation or wilful misapplication of clients’ money, securities, or other property, by an attorney admitted to practice in this state’ (State Finance Law § 97-t [4]). The Legislature has entrusted the Board with ‘sole discretion to determine the merits of claims presented for reimbursement, the amount of such reimbursement and the terms under which such reimbursement shall be made’ (State Finance Law § 97-t [6]). Terms of reimbursement — including an aggrieved client’s agreement to assign or subrogate rights — are to be fixed by the Board (State Finance Law § 97-t [6]).” (Id. at 65; see also generally Lawyers’ Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y., 94 NY2d 398 [2000].)
Statutory provisions that originally appeared in subdivisions (4), (5), and (6) of section 97-t of the State Finance Law can now be found in section 468-b of the Judiciary Law, but the stated power of the Fund remains “reimbursing . . . losses caused by the dishonest conduct of attorneys” {see Judiciary Law § 468-b [2]).
In addition to the biennial registration fee imposed on attorneys, the Fund is authorized to receive “such other monies as may be credited or otherwise transferred from any other fund or source, pursuant to law,” and “[a]ll deposits of such revenues not otherwise required for the payment of claims . . . shall be secured by obligations of the United States or of the state.” {See State Finance Law § 97-t [2].) Presumably, the additional sources of deposits to the Fund would include the funds of “missing clients” that are ordered to be deposited pursuant to the Rules of Professional Conduct and the rules of the First *341 and Second Departments discussed above. Also, the Rules of the Chief Administrator provide that payments of sanctions imposed on attorneys pursuant to part 130 are to be made to the Fund. (See Rules of Chief Admin of Cts [22 NYCRR] § 130-1.3.)
Other than State Finance Law § 97-t and Judiciary Law §§ 468-a and 468-b, the Lawyers’ Fund appears in only one statute, Judiciary Law § 90, which provides that, where an attorney has been disciplined for wilfully misappropriating or misapplying money or property in the practice of law, the attorney may be ordered to reimburse the Fund “for awards made to the person whose money or property was wilfully misappropriated or misapplied” (see Judiciary Law § 90 [6-a] [a]).
There is no statute or rule that addresses specifically the Lawyers’ Fund’s receipt of funds belonging to “missing clients” or the “safeguarding and disbursement to persons who are entitled thereto” (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.15 [f]). The rules of the Fund (see 22 NYCRR 7200.1 et seq.) deal only with “claims for the reimbursement of losses caused by the dishonest conduct of attorneys admitted to practice in New York State” (see 22 NYCRR § 7200.8 [a]). The public website of the Fund tells visitors that the losses covered by the Fund are those “caused by the dishonest conduct of lawyers,” and that “[l]osses are not generally reimbursed . . . until a lawyer is disbarred by the New York court system.” (See Lawyers’ Fund for Client Protection of the State of New York, http://www.nylawfund.org/faq.html.)
This court has been unable to find any published judicial decision addressing the deposit of funds belonging to “missing clients” with the Lawyers’ Fund for Client Protection, or any claim against the Fund by the client, or by a third party who might assert an interest in the funds, such as an heir or judgment creditor. A decision of the Third Department in Miszko v Gress (4 AD3d 575 [2004]) makes mention of an attorney’s motion for an order authorizing a deposit of settlement funds of “missing clients” with the Fund (see id. at 577), but does not otherwise address it. Among other questions that might arise in the absence of specifically applicable statutory or regulatory provisions is whether the determinations of claims made against missing-client funds are to be judicially reviewed in the same way as claims for reimbursement of losses from attorney misconduct (see generally Matter of Pappas v Lawyers’ Fund for Client Protection, 60 AD3d 1195 [3d Dept 2009]).
Notwithstanding this apparent gap in statutory and regulatory treatment, the court sees no basis for not following the ex *342 plicit direction of the Appellate Division that the funds of “missing clients” be deposited with the Lawyers’ Fund for Client Protection. Such a deposit, however, and the disbursement of all or part of the funds, must be subject to the further order of the court, which might be sought by the client or a third party asserting an interest in the funds, or, indeed, by the Lawyers’ Fund itself. (The Fund was served with a copy of the instant motion, but has not appeared.)
The motion is, therefore, granted to the extent that, within 30 days after entry of this order, the Law Offices of Michael S. Lamonsoff, PLLC shall deposit $31,179.72 with the Lawyers’ Fund for Client Protection of the State of New York for the account of Antonio Vega, subject to further order of the court, accompanying such deposit with a copy of this order with notice of entry, served in the manner of a summons (see CPLR 307; Hernandez v Mueller, 29 Misc 3d 522, 526-527 [Sup Ct, Kings County 2010]).