Matter of Cadlerock Joint Venture, L.P. v John H. Fisher, P.C. (2019 NY Slip Op 08744)





Matter of Cadlerock Joint Venture, L.P. v John H. Fisher, P.C.


2019 NY Slip Op 08744


Decided on December 5, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 5, 2019

525745

[*1]In the Matter of Cadlerock Joint Venture, L.P., Respondent-Appellant,
v
John H. Fisher, P.C., Respondent. Peter Kuber et al., Appellants- Respondents.

Calendar Date: October 15, 2019

Before: Lynch, J.P., Clark, Devine and Pritzker, JJ.


Peter Kuber and Kathleen Kuber, Malta, appellants-respondents pro se.
Vlock & Associates, PC, New York City (Steven P. Giordano of counsel), for respondent-appellant.
Devine, J.
Cross appeals from an order of the Supreme Court (Platkin, J.), entered July 26, 2017 in Ulster County, which partially granted petitioner's application, in a proceeding pursuant to CPLR 5225 and 5227, to direct respondent to turn over certain escrow funds to petitioner.
Petitioner is the assignee of a 2007 money judgment against Peter Kuber. In 2010, Kathleen Kuber, Peter Kuber's wife, was involved in a car accident. She and Peter Kuber, derivatively, brought suit to recover for her injuries. The action was settled in 2016, with the Kubers obtaining a net unallocated recovery of $119,503.84. Petitioner served a restraining notice on respondent, who was the Kubers' attorney in the personal injury action and the holder of the settlement proceeds, then commenced this turnover proceeding to recover the money (see CPLR 5225, 5227). Supreme Court determined that petitioner would only be entitled to that portion of the settlement representing Peter Kuber's recovery and, as such, ordered an allocation hearing. Following that hearing, Supreme Court found that 10% of the settlement proceeds were attributable to Peter Kuber's derivative claim and directed respondent to release that portion to petitioner. The Kubers appeal and petitioner cross-appeals from that order.
Initially, although the Kubers participated in this matter before Supreme Court, they are not named parties and never sought to intervene (see CPLR 5225 [a], [b]; 5227, 5239). They are nevertheless aggrieved by an order directing the payment of monies to which they assert a claim and, contrary to petitioner's contention, have standing to appeal from it (see CPLR 5511; Auerbach v Bennett, 47 NY2d 619, 629 [1979]; Triangle Pac. Bldg. Prods. Corp. v National Bank of N. Am., 62 AD2d 1017, 1017 [1978]).
Turning to the merits of the Kubers' appeal, their brief references facts outside of the record to advance arguments that were not placed before Supreme Court. Those arguments are unpreserved (see Matter of Brodsky v New York City Campaign Fin. Bd., 107 AD3d 544, 545 [2013]), but some of them involve the claim that the underlying judgment against Peter Kuber is void for lack of jurisdiction, a type of collateral attack that may be raised at any time (see Royal Zenith Corp. v Continental Ins. Co., 63 NY2d 975, 977 [1984]). That said, our review remains limited "to facts contained in the record and any arguments based thereon," and the record evidence does not establish any deficiency in the 2007 judgment (Gagen v Kipany Prods., 289 AD2d 844, 845 [2001]; see Bullock v Miller, 145 AD3d 1215, 1216 [2016]; Matter of D.B.S. Realty v New York State Dept. of Envtl. Conservation, 201 AD2d 168, 173 [1994]). We therefore move on to issues that were actually raised before Supreme Court.
To the extent that the settlement proceeds were attributable to Kathleen Kuber's claim for personal injuries, they were her separate property and petitioner, the assignee of a judgment against Peter Kuber, had no interest in them (see Domestic Relations Law § 236 [B] [1] [d] [2]; Signorile v Signorile, 102 AD3d 949, 950 [2013]; Burnett v Burnett, 101 AD3d 1417, 1418 [2012]). The unallocated proceeds were not transmuted into marital property by their deposit into respondent's escrow account, which is not a joint account held by the Kubers within the meaning of Banking Law § 675 (compare Matter of Timoshevich, 133 AD2d 1011, 1012 [1987], with Albertalli v Albertalli, 124 AD3d 941, 942 [2015]). It was therefore necessary, contrary to petitioner's suggestion, for Supreme Court to conduct a hearing to determine the "allocation of the proceeds between [Kathleen Kuber's] cause of action for personal injuries and [Peter Kuber's] derivative cause of action" (Richmond v Richmond, 144 AD2d 549, 551 [1988]; see also CPLR 410; Matter of Cadle Co. v Satrap, 302 AD2d 381, 382 [2003]).
The allocation hearing featured the testimony of Peter Kuber, who related how Kathleen Kuber suffered severe injuries in the 2010 automobile accident that required extensive medical and psychiatric treatment and caused ongoing psychological and cognitive impairments that have left her unable to work and significantly diminished her quality of life. In contrast, Peter Kuber was not involved in the 2010 accident and testified that his derivative claim was based upon the negative impact his wife's mental struggles have had upon the marital relationship. We defer to the assessment of Supreme Court that Peter Kuber's testimony was credible (see Steuhl v CRD Metalworks, LLC, 159 AD3d 1182, 1184 [2018]) and, notwithstanding the protestations of both petitioner and the Kubers, perceive no reason to disturb its finding that 10% of the settlement proceeds were attributable to Peter Kuber's derivative claim and recoverable by petitioner (see e.g. Miszko v Gress, 4 AD3d 575, 578-579 [2004], lv denied 3 NY3d 606 [2004]).
Finally, petitioner asserts that Supreme Court should have drawn a negative inference against respondent for failing to call Kathleen Kuber to testify at the hearing. Peter Kuber testified in detail regarding Kathleen Kuber's injuries and the extent of her damages. Kathleen Kuber was present, did not provide what may well have been duplicative testimony and, notably, petitioner did not object to her silence or seek to examine her. Petitioner instead waited until its response to respondent's posthearing submission to raise the issue, thereby depriving respondent of the opportunity to put Kathleen Kuber on the stand or argue that a negative inference was not warranted (see e.g. DeVito v Feliciano, 22 NY3d 159, 165-166 [2013]). Petitioner's request was untimely and would have caused undue prejudice to respondent, as well as the Kubers, if granted under these circumstances. Thus, Supreme Court did not abuse its discretion in refusing to do so (see People v Chaneyfield, 157 AD3d 996, 1000 [2018], lv denied 31 NY3d 1012 [2018]; Mereau v Prentice, 139 AD3d 1209, 1211 [2016]; Popolizio v County of Schenectady, 62 AD3d 1181, 1184 [2009]).
Lynch, J.P., Clark and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.